**In the Matter of MARKER EIGHTY, INC., Debtor.**

**Bankruptcy No. 86–4888.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Jan. 28, 1987.

Malka Isaak, Tampa, Fla., for Marker Eighty, Inc.

Cindy L. Turner, Tampa, Fla., for Southland Resorts of Kentucky, Inc.

## ORDER ON MOTION FOR RELIEF FROM STAY

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration presents a classic example of a frequently recurring problem which occurs when a basically simple stay litigation turns into a complicated lawsuit due to the fact that the relief sought is for "cause," which in turn brings into play substantive issues and calls for a determination of the merits of the respective rights of the parties involved. This is especially so when the "cause" for relief from the stay injects the issue of ownership of the property in controversy and not merely a protection of the interests of a secured party, which is the case ordinarily.

The original motion was filed by Southland Resorts of Kentucky (Southland) on November 13, 1986. Southland sought relief from the automatic stay for "cause," based on the contention that the Debtor, Marker Eighty, Inc. (Marker) obtained possession of a motel facility without justification and legal basis; that Marker has no ownership interest in the subject property; that Marker is wrongfully using the revenues and profits from the operation of the motel facility without accounting; and that Southland is being harmed because of its continuing liability on other ongoing obli-

562

gations of Southland relating to the motel facility accruing in the approximate amount of $31,000.00 per month payable to the holder of the first mortgage, Commonwealth Savings and Loan Association (Commonwealth) encumbering the subject property. This motion, filed by Southland also indicated that the Debtor has no ownership interest in the subject property, thus intimating that the property is not property of the estate, and therefore, is not protected by the automatic stay.

In conformity with local practice, on November 24, 1986, this Court entered an Order and directed Marker to file a response to this Motion. The Order also scheduled the final evidentiary hearing on Southland's Motion to Lift the Stay. On November 24, 1986, within the time directed by this Court, Marker filed its response. In its response Marker admitted certain facts and denied certain facts asserted by Southland in its motion. However, the response failed to state any factual allegations whatsoever which were directly responsive to the facts asserted by the Motion of Southland. The first motion filed by Southland was heard in due course. On December 15, 1986, this Court entered an order and denied the motion without prejudice and without stating any reasons for the denial.

On December 9 Southland filed a renewed motion for relief from the automatic stay or in the alternative sought adequate protection and requested an expedited hearing. This motion again just like the original motion basically asserted a right to the relief for lack of adequate protection, but in Paragraph 6 also incorporated each of the allegations set forth in the original motion which, of course, included the contention that Southland is entitled to relief for "cause" because according to Southland Marker had no ownership interest in the subject property and the subject property is not property of the estate and for this reason the same is not protected by the automatic stay.

In due course the Debtor filed a response to the Renewed Motion for Relief. The response again admitted certain facts and denied others and asserted by way of defense that Southland seeking to recover the subject property violated the automatic stay by filing a lawsuit in the state court after the commencement of the case which, of course, is not a defense to the Motion filed pursuant to § 362(d) of the Bankruptcy Code. While the response of Marker did not state any inclination to offer any adequate protection to Southland, it states that Marker met all tax obligations incurred in connection with the operation of the motel and all other debts arising from the continued operation of the business; that it is paying all or substantially all outstanding bills incurred by Southland when it acquired control and possession of the subject property.

On December 31, 1986, Commonwealth Savings and Loan Association (Commonwealth) filed a pleading entitled "Joinder in Motion for Relief From Stay". In its motion Commonwealth alleges that it has a valid, outstanding first mortgage on the subject property in the original principal amount of $2,250,000.00 secured by a mortgage deed encumbering the subject property, and the mortgage obligation remains outstanding and it is in default, and a determination of the ownership interest in the subject property will materially affect a secured creditor of Southland. Based on the foregoing, Commonwealth sought to intervene for the purpose of asserting its interest in the property, although it did not file a motion to intervene as such, and there was, of course, no order entered by this Court authorizing Commonwealth to intervene in this stay litigation. Of course, this turn of events added further confusion to this already procedurally confusing litigation and placed this Motion for Relief in the posture in which it came on for final evidentiary hearing scheduled at the request of Southland to resolve the issues involved on an emergency basis.

At the emergency hearing Marker asserted for the first time that the entire proceeding is procedurally improper because procedure to recover properties or

monies is an adversary proceeding, and by virtue of Bankruptcy Rule 7001 must be instituted by a complaint filed in compliance with Part VII of the Bankruptcy Rules. B.R. 7003. In addition, it was contended by Marker that it was not prepared to proceed to try the issue of ownership because it was not given sufficient notice of this ownership issue, therefore, it would be a denial of its right to due process to compel Marker to proceed with the trial. This contention is patently frivolous and is without merit for the following reasons:

There is hardly any question that Marker was very well aware from the very beginning that in spite of the somewhat confusing and inarticulate pleading of Southland, that the ownership issue was involved in this controversy from day one in addition to the issue of lack of adequate protection. While obviously these two concepts are inconsistent, there was no secret that Southland took the position that ownership never passed to Marker and that it is still the owner of the motel facility. The fact of the matter is that at the December 22 hearing this Court clearly stated for the record that at the rescheduled final evidentiary hearing this Court would receive evidence on the sole and limited issue of the ownership of the subject property. In light of the foregoing, it is evident that any claim of surprise by Marker is without basis and not supported by the evidence. Based on these facts, this Court announced at the trial that the Motion filed by the Debtor is not well taken and should be denied, especially in light of the fact that the witnesses of Southland came from Kentucky prepared to testify, and this record is devoid of any evidence that the debtor was not in a position to adequately prepare to try the issue involved.

At the conclusion of the trial counsel for Marker requested again that this Court keep the record open in order to enable Marker to present the escrow agent involved in the transaction which is the center event of the present controversy, Mr. Maro, to testify as to the matters which transpired between the parties concerning the subject property. Inasmuch as this Court is satisfied that Marker had adequate time to prepare for the trial, that there is no showing that Mr. Maro was not available or his attendance could not be procured, this Court informed the parties that the record will not be kept open and the record presented at the trial is sufficient basis for this Court's determination of the issue tried.

The underlying facts which appear from the record and as established at the final evidentiary hearing reveal the following:

At the time relevant to this controversy Southland was the owner and operator of a hotel known as Breezy Palms Motel located in the Florida Keys, specifically in Marathon, Florida. The property, located on a two and a half acre tract of land, is a 40-unit motel. Sometime in 1985 Southland listed the subject property for sale with Grace Group Realtors (Grace), a real estate firm located in St. Petersburg, Florida. On May 30, 1986, Grace presented a contract for sale of the motel facility to Southland. Under this contract an entity known as Turn Key Real Estate Developers, Inc. (Turn Key) agreed to purchase the subject property from Southland. The contract called for a closing date of July 20, 1986. No closing occurred at or prior to the date fixed for closing by this contract. It appears that Turn Key was unable to proceed and conclude the closing and the purchase of the subject property ostensibly due to its ability to obtain the financing necessary to purchase the property.

On July 30, 1986, the principal of Southland, Mr. Smith; the principal of Grace, Mr. Grace; Mr. Roosevelt Jones, who appeared to be the principal of Turn Key, the party to the original purchase contract (Southland's Exh. No. 6) and Mr. Dennis, the principal of Marker, which up to this point was not involved at all with the proposed sale of the motel, attended a meeting in the office of Mr. Maro, of the lawfirm Maro & Johnstone, an attorney in Coral Gables, Florida. At that meeting Mr. Smith on behalf of Southland executed several documents as seller, and Mr. Dennis on behalf

of the new entity, Marker, as the purchaser, concerning the purchase of the subject property. Mr. Jones, the principal of Turn Key, the original purchaser, while he attended the meeting at times, it appears that his attendance was only because he was supposed to guarantee an obligation in connection with possibly some future refinancing project. At that meeting the following documents were executed by the parties:

(1) An Escrow Agreement whereby Mr. Maro and his partner, Mr. Johnstone were appointed as escrow agents for the purpose of retaining the following documents in escrow:

(2) A promissory note in the amount of $80,000.00 dated August 2, 1986, by Marker Eighty, Inc., individually and Premier Resource Club, Inc., and Turn Key Coal, Inc., as makers payable to Grace Group Realtors of St. Petersburg, Florida.

(3) A document entitled Promissory Note, in the amount of $672,570.00 dated August 2, 1986, by Marker Eighty, Inc., Premier Resource Club, Inc., and Turn Key Coal, Inc., as makers payable to Southland Resorts of Kentucky, Inc., the payees.

(4) A mortgage in the amount of $752,570.00 dated August 2, 1986, between Turn Key Coal, Inc., mortgagor, Southland Resorts of Kentucky, mortgagee.

(5) A warranty deed dated August 2, 1986, between Marker Eighty as grantor and Southland Resorts of Kentucky as grantee.

The Escrow Agreement provided inter alia that the documents deposited with the escrow agent, Maro and Johnstone (primarily with Mr. Maro) shall be delivered to the purchaser, Marker, but only if there is no default on the promissory notes and they are paid in full; but in the event the purchaser, Marker, defaults under its obligations under the agreement, the seller, Southland, shall have the right to give a written notice of the default to Marker, and if the default is not cured within 15 days, the escrow agent, Maro, shall deliver to Southland, all the documents placed in escrow.

In this connection it should be noted that the Escrow Agreement did not call for a deposit of a warranty deed from Southland to Marker conveying the subject property, although it is clear that such document was, in fact, executed on July 30 by Mr. Smith on behalf of Southland at a meeting, indicating a conveyance of the subject property by Southland to Marker (Debtor's Exh. No. 1). However, there is evidence in this record to establish that the warranty deed was subject to an oral escrow agreement or at least an understanding between Mr. Smith and Mr. Maro, the escrow agent, that the same will not be released to Marker unless directed to do so by Mr. Smith. It is without dispute that while this deed recited consideration of $10, this Court is satisfied that no money was actually changed hands at a meeting contrary to the belated assertion by Mr. Dennis, the president of Marker. Of course, it is equally without dispute that Marker has yet to pay anything to Southland, including the down payment called for by the agreement and nothing on the promissory notes mentioned earlier. In addition, Marker neither paid off the first mortgage nor achieved an assumption of same, and so far no payment has been made on the first mortgage by Marker held by Commonwealth.

All documents deposited in the Escrow Agreement were executed July 30 even though the documents carry an execution date of August 2. While the Debtor places great significance on this discrepancy, this Court is satisfied that this discrepancy has been satisfactorily explained, and it is without legal significance. This is so because it was done solely for the purpose of avoiding any possible liability of Southland for prematurely terminating the employment of a manager of the motel who was already terminated, but the notice date provided by the employment contract was yet to expire on August 2, 1986.

It appears, as noted earlier, that after the manager of the motel was terminated by Southland sometime prior to the July 30

meeting and was not replaced. For this reason the motel was basically without a manager during this time. For this reason Mr. Smith agreed to turn over the management, possession, and control of the motel to Marker in anticipation of Marker's ability to obtain the necessary financing and complete the transaction in a few days. Marker did take over the operation of the motel and assumed full control of the motel facility and it is still in possession and operates the same. Mr. Dennis, the principal of Marker, changed, although with some delay, all utility contracts from Southland to Marker. While Marker may have paid current trade bills and the utility bills, it is without dispute, as noted earlier, that it paid nothing to Southland nor to Commonwealth. It is equally without dispute that the Debtor failed to pay the insurance premiums and the current insurance protects the property and is maintained only because Southland procured the insurance and paid the premium.

On October 3, 1986, Mr. Smith on behalf of Southland sent a letter to Mr. Dennis, the principal of Marker, notifying him of five specific items which according to Mr. Smith were in default. The default notice basically related to the Debtor's failure to make the required payments on the two notes; either to pay off or assume the first mortgage and Marker's failure to maintain insurance (Southland's Exh. No. 3). This notice of default was followed up by a second letter (Southland's Exh. No. 4) dated October 9, 1986, in which Mr. Smith informed Mr. Dennis that unless the defaults mentioned in the October 3 letter are cured "within the appropriate time frame" he will arrange the "necessary managerial transition" and his intention to retake control of the motel and "as Marker was unable to effectuate the purchase of the property as structured". While this October 9 letter is not quite clear considering the totality of the circumstances of this transaction between the parties, it is fair to infer that the appropriate time frame reference related to the 15–day grace period to cure defaults mentioned in the Escrow Agreement, and Southland considered the trans-

action unfinished and not completed at all times.

The 15–day grace period was about to expire by midnight on October 24, 1986, but before the day was over, two important things occurred. On that date Marker filed its Petition for Relief under Chapter 11 at 3:45 p.m., and on the same date at 4:36 p.m. recorded in the public records of Monroe County the following documents:

(1) affidavit executed by Mr. Dennis in which he stated that the subject property was purchased by Marker on August 2, 1986; (2) an unrecorded warranty deed from Southland to Marker; (3) a mortgage deed from Marker to J. Maro, the escrow agent (Southland's Exh. No. 1).

It is a mystery as to how Mr. Dennis obtained the warranty deed from Mr. Maro who held the deed according to Mr. Smith in escrow subject to further instructions by Mr. Smith. What appears to be a reasonable explanation is that the warranty deed was given to Mr. Dennis by either express or implied consent of Mr. Smith for the sole limited purpose of enabling Mr. Dennis to procure the financing necessary to complete the transaction, that is, the funds to meet the obligations under the two notes, and either pay off the Commonwealth mortgage or achieve an assumption of the same. Of course, it is even a greater mystery of what is the basis of the mortgage deed running from Marker as mortgagor to J. Maro, the escrow agent who never had any financial involvement whatsoever in this convoluted transaction. Moreover, it is also clear that Marker never sought or obtained any relief from this Court to execute any mortgages on the property.

Basically these are the facts relevant to the sole issue, i.e., the ownership of the subject property, and based on same, this Court now concludes as follows:

█ This record leaves no doubt that the transaction which transpired between the parties on July 30, 1986, was at most a closing in escrow. There is nothing in this record to substantiate a conclusion that there was an intention by the owner of the

property, Southland, to unconditionally and absolutely convey legal ownership of the motel facility to Marker. This is evident from the Escrow Agreement itself and clearly it was understood by all parties that in order to finalize this transaction it was necessary for Marker to obtain the necessary financing and to comply with the balance of the provisions of the Escrow Agreement, notably to live up to the obligation represented by the two notes in order to terminate the Escrow Agreement.

It is without dispute that even as of today Marker was unsuccessful and has not been able to obtain any financing and either pay off or to assume the first mortgage held by Commonwealth and, of course, or to make any payments on the promissory notes. Thus, pursuant to the very terms of the Escrow Agreement, default occurred; that the notice of default, albeit, not very clearly articulated was given; that the curing period started on October 10, 1986, and was to end October 24 at midnight. Just prior to the termination of the grace period to cure the default, Marker filed its Chapter 11 Petition obviously for the purpose of invoking the protection of the automatic stay imposed by § 362 of the Bankruptcy Code. In addition, on the very same afternoon Marker placed on the public records documents which while they may not have indicated a valid legal ownership of the subject property by Marker certainly were sufficient to create a cloud on the title of Southland.

■ The protection provided by the automatic stay imposed by § 362 of the Bankruptcy Code is broad but it is not without limitations. It was designed by Congress to serve a two-fold purpose. First, to protect the properties of the estate against certain actions by third parties by prohibiting the enforcement against the properties of the estate of any judgment, any acts to obtain possession, or to exercise any control over the properties of the estate; second, it was designed to prohibit third parties from imposing and enforcing personal liability of a debtor based on a pre-petition claims. In the present instance it is clear

that Southland does not seek to impose any personal liability on Marker but seeks to recover the motel facility.

From this it follows that unless the motel facility was at the time of the commencement of the case "property of the estate," automatic stay does not apply and, therefore, Southland should be permitted to proceed in a non-bankruptcy forum to assert whatever right it has against the subject property or in the alternative, a declaration by this Court inasmuch as the issue was tried, that the motel facility was and still is property of Southland.

■ Having concluded earlier that Marker has not acquired any legal or equitable ownership in the subject property by virtue of the fact of what occurred on July 30, that is at the closing in escrow, it is difficult to perceive how it could have acquired anything thereafter in absence of proof that the escrow was properly terminated and the escrow agent was authorized an properly released all the documents placed with him in escrow. This being the case, on the date of the notice of default, there was still a non-concluded real estate transaction under which the only conceivable right this Debtor had was the right to cure the defaults mentioned in the October 9 letter within the 15–day time period. This being the case, the only savings provision of the Code could possibly help Marker is § 108(b) of the Bankruptcy Code, which provides that if an agreement fixed a period within which the default can be cured, and such period has not expired before the date of the filing of the Petition, the trustee may cure such default either at the end of the period fixed or 60 days after the entry of the order for relief, whichever is later. *See Johnson v. First National Bank of Montevideo, Minn.*, 719 F.2d 270 (8th Cir.1983); *In re Glenn, et ux. v. Miller*, 760 F.2d 1428 (6th Cir.1985).

In the instant case the order for relief was entered on the date the Petition was filed, which is October 24, 1986. Thus, the cure period without doubt expired at least by December 26, 1986. Having concluded that the automatic stay no longer protects

the Debtor because the motel facility is not property of the estate, and having concluded that the only interest of the Debtor on the date of the commencement of the case was its right to cure the default, a period which expired, the Motion to Lift the Stay is well taken and should be granted and the moving party, Southland, shall be authorized to proceed in a non-bankruptcy forum to undertake appropriate steps to regain possession of the subject property.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion to Lift Stay filed by Southland be, and is hereby, granted, and Southland is hereby authorized to proceed in a non-bankruptcy forum to undertake appropriate steps to regain possession of the subject property.