**UNITED STATES of America (EPA), Plaintiff,**

**and**

**Supporters to Oppose Pollution, Inc., Intervenor–Plaintiff,**

**v.**

**ENVIRONMENTAL WASTE CONTROL, INC., et al., Defendants.**

**No. S87–55 (RLM).**

United States District Court, N.D. Indiana, South Bend Division.

Aug. 6, 1991.

---

4. See 11 U.S.C. § 101(4)(A).

John C. Hamilton, South Bend, Ind., for Supporters to Oppose Pollution, Inc.

Christopher G. Scanlon, James W. Clark, Kevin M. Toner, Indianapolis, Ind., Thomas J. Brunner, James M. Matthews, South Bend, Ind., for non-parties Heritage Group, etc.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause returns to the court following entry of judgment (and affirmance on appeal) and the defendants' lengthy period in bankruptcy proceedings on two motions filed by plaintiff-intervenor Supporters to Oppose Pollution, Inc. ("STOP"). STOP has filed a motion to withdraw reference of *Matter of Environmental Waste Control, Inc.*, Bankr.N.D.Ind., No. 89–30581–HCD, pursuant to 28 U.S.C. § 157(d), and also has filed a Motion for Proceedings Supplemental against several non-parties, including the Heritage Group, Resources Unlimited, Inc., Heritage Environmental Services, Inc., and Asphalt Materials, Inc. (collectively referred to as "Heritage"). As part of its response to the Motion for Proceedings Supplemental, Heritage has moved for sanctions against STOP pursuant to Federal Rule of Civil Procedure 11. STOP has cross-moved for sanctions against Heritage.

The parties fully briefed these matters and came before the court for oral argument on August 2, 1991. The court then took these matters under advisement. As is explained more fully below, the court concludes that the matters before the bankruptcy court are not such as to justify removing those issues to the district court; that STOP's motion for proceedings supplemental must be denied because the automatic stay in bankruptcy precludes some of the relief sought, and Indiana procedure and the prior cases involving STOP and Heritage preclude the rest of the relief sought; that STOP's motion for proceedings supplemental constitutes a good faith argument for the extension of existing law and so does not justify sanctions; and that Heritage's motion for sanctions was not filed for an improper purpose, and so does not justify sanctions. Accordingly, the court denies each of the motions.

## I. BACKGROUND

The United States Environmental Protection Agency originally filed this action as a suit against Environmental Waste Control, Inc., West Holding Company, James Wilkins, and Stephen Shambaugh (collectively "EWC"), owners and operators of a hazardous waste landfill known as the Four County Landfill, under the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 *et seq.* ("RCRA"). STOP, a citizens group, intervened as a plaintiff in the government's action pursuant to 42 U.S.C. § 9613(i). After thirty-one days of trial, the court permanently enjoined EWC from operating the Four County Landfill, ordered corrective action for the landfill property, and imposed substantial fines against the defendants. *United States v. Environmental Waste Control,* 710 F.Supp. 1172 (N.D.Ind.1989), *aff'd,* 917 F.2d 327 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991). The court also awarded STOP attorney fees and costs incurred in litigation as a prevailing party, in the total amount of $146,426.00. *United States (EPA) v. Environmental Waste Control, Inc.,* 737 F.Supp. 1485 (N.D.Ind.1990).

Heritage originally was not a party to this action, but on October 10, 1989, STOP moved to vacate the judgment under Fed. R.Civ.P. 60(b) to allow STOP to amend its complaint to add Heritage members as defendants, based on its discovery of information that led STOP to believe that Heritage members were so interrelated with EWC as to render them equally liable for the RCRA violations on theories of "alter ego" or joint venture. The EPA and Heritage opposed STOP's motion. The court denied STOP's motion in March, 1990, holding that STOP's failure to engage in pretrial discovery precluded STOP from making the showing necessary to obtain relief under Rule 60(b). No appeal was taken from that ruling.

### A. Other Suits

Heritage also has been named as defendants in three other actions brought by STOP and related to the RCRA claims in this cause.

STOP brought its first complaint against Heritage on July 24, 1989 ("STOP I"), seeking imposition of the same liabilities and obligations upon Heritage that were imposed upon the EWC in this action, pursuant to RCRA, 42 U.S.C. § 6972(a)(1)(A). On November 17, 1989, STOP voluntarily dismissed "STOP I" and simultaneously filed another action ("STOP II") against the Heritage Group alleging the same claims as in "STOP I". The court summarized the complaint in "STOP II" as follows:

STOP claims that EWC and the other defendants in the EPA action turned out to be little more than puppets and, in fact, the Landfill's real operator was the Heritage Group, acting through its constituent corporate members.

Count I alleges that the Heritage Group is liable under 42 U.S.C. § 6973(a) as the Landfill presents an imminent and substantial endangerment to health and the environment due to past and present release of hazardous wastes both on-site and off-site.

Count II alleges violations of 42 U.S.C. §§ 6924 and 6925 in that the Heritage Group has violated and continues to violate the standards applicable to owners and operators of hazardous waste disposal facilities. STOP's complaint alleges that the Heritage Group presently is in violation in that no proper characterization of the aquifer underlying the Landfill exists, the groundwater affected by the Landfill is not properly being monitored, and no proper remedial measures have been taken even though the Landfill continues to contaminate groundwater.

The court dismissed "STOP II" on July 31, 1990, finding that it lacked subject matter jurisdiction over the citizens group's claims in Count II of STOP's complaint, because the EPA was diligently prosecuting the same claims against the EWC that STOP brought against Heritage in "STOP II". Accordingly, the court found that STOP had failed to allege a claim upon which relief might be granted, pursuant to 42 U.S.C. § 6972(b)(1)(B). The court dis-

missed Count I in "STOP II" because STOP had failed to give the ninety-day nonadversarial notice required under 42 U.S.C. § 6972(b)(2)(A); *see also Hallstrom v. Tillamook County*, 493 U.S. 20, 110 S.Ct. 304, 107 L.Ed.2d 237 (1989).

On August 10, 1990, STOP served notice of its intent to file another action against Heritage; "STOP III" was filed on November 29, 1990. That complaint alleged imminent endangerment pursuant to 42 U.S.C. § 6972(a)(1)(B), and alleged "that EWC and the original defendants turn out to have been little more than puppets; the real operator of the Landfill was the Heritage Group, acting through three, or more, of its several constituent corporate members."

Heritage moved to dismiss "STOP III", again arguing that STOP had not provided the ninety-day nonadversarial notice period and further that the doctrine of *res judicata* barred the suit. On March 29, 1991, the court granted the defendants' motion on Heritage's first grounds for dismissal and, in anticipation of subsequent actions by STOP, went on to consider the *res judicata* issue as well. *Supporters to Oppose Pollution, Inc. v. The Heritage Group, et al.*, 760 F.Supp. 1338, 1342 (N.D.Ind.1991). Heritage argued that "STOP III" should be barred because the claims raised in that cause had been finally adjudicated in the EPA's RCRA action against the EWC—this case. 760 F.Supp. at 1342. The court agreed with Heritage's position, finding that the "STOP III" complaint sought to hold Heritage liable for the costs of the relief ordered in the EPA suit. 760 F.Supp. at 1345. Accordingly, STOP's third attempt to hold Heritage liable for the court's judgment against the EWC failed on the defendants' 12(b)(6) motion.

The court's rulings in "STOP II" and "STOP III" are on appeal; in a post-hearing memorandum, STOP informed the court that the Seventh Circuit has scheduled oral argument in those cases for September 25, 1991.

Meanwhile, in the bankruptcy court, each of the defendants collectively referred to as EWC filed Chapter 11 petitions on April 10, 1989, shortly after judgment was entered in this cause. Those bankruptcy proceedings remain pending as of this date. As of approximately March 29, 1991, EWC appeared to have the following remaining assets: $400,000.00 in available cash; $500,000.00 in the form of an anticipated tax refund; and approximately $400,000.00 in uncollected accounts receivable. EWC states that it presently has considerably less than $400,000.00 in assets and that collection of any accounts receivable is unworkable without incurring additional debts. In any event, EWC's debts, including present and future obligations for corrective action pursuant to the March, 1989 judgment in this cause, greatly exceed its assets.

Based on this anticipated deficit, debtor EWC moved to dismiss the bankruptcy proceedings on April 23, 1991. The bankruptcy court has scheduled a hearing on the debtor's motion to dismiss for August 12, 1991. As an alternative, STOP, the United States Trustee, and other parties have moved to convert the proceedings to those for straight liquidation under Chapter 7 and further have pursued the possibility of setting up an operating trust, through which a number of potentially responsible parties for the landfill might deposit funds to cover EWC's debts and the costs of corrective action.

### B. The Motions at Issue

On April 23, 1991, STOP filed its motion for proceedings supplemental to execution against Heritage in this court, and applied for relief from the automatic stay in bankruptcy Cause No. 89–30581 to pursue its proceedings supplemental against Heritage here. The bankruptcy court initially sustained Heritage's objection to the motion for relief from stay, but STOP moved the bankruptcy court to reconsider. After holding a hearing on July 19, the bankruptcy court granted the motion for reconsideration and set a briefing schedule for the issue of relief from stay.

STOP's motion for proceedings supplemental raises four theories, contained in paragraphs 4 through 6 of its motion, un-

der which Heritage is answerable in proceedings supplemental:

4. Post-judgment defendants Heritage Group, RUI, HES and Asphalt Materials owe to EWC and the other judgment-debtors obligations under [RCRA] to indemnify, contribute to, and fulfill the judgment debtors' monetary and equitable liability as set forth above due to the fact that such post-judgment-defendants were, for the purposes of RCRA, operators of the Landfill during at least a substantial period of time when such Landfill repeatedly violated [RCRA]. . . .

5. The foregoing post-judgment defendants are also liable on the judgments alleged above due to the fact that, because of their control of the judgment-debtors, the judgment-debtors were their alter-egos, agents or employees with respect to a substantial portion of the liability established in the foregoing judgments.

6. STOP is informed, believes, and thereon alleges that prior to the judgment-debtors' bankruptcies in April, 1989, one or more of the post-judgment-defendants withdrew substantial funds from the judgment-debtors, including, specifically, EWC, and are obligated to return such funds to such judgment debtors, as to which obligation STOP claims prior right due to the judgments referred to above.

On June 10, 1991, STOP filed its "Alternative Motions to Withdraw Reference of EWC Bankruptcy" with the bankruptcy court; that filing was docketed in this court four days later. The court will address this motion for relief first.

## II. STOP's MOTION TO WITHDRAW REFERENCE

In its motion to withdraw reference, STOP asks this court for alternative relief pursuant to 28 U.S.C. § 157(d).

First, STOP requests that this court withdraw the bankruptcy cause "for all purposes" and further asks that the court jointly preside over those proceedings with Bankruptcy Judge Harry C. Dees. Specifically, STOP asks this court to

. . . withdraw reference of the entire case in order to preside over all remaining issues, including EWC's motion to dismiss, various parties' motions to convert to Chapter 7 and the possibility of establishing an operating trust intended to liquidate the estate over possibly a substantial period of time . . .

In support of this all-purpose withdrawal, STOP refers the court to *American Tel. & Tel. Co. v. Chateaugay Corp.*, 88 B.R. 581, 586–88 (S.D.N.Y.1988) (withdrawal necessary for district court to determine when Comprehensive Environmental Response ("CERCLA") claim arose and whether it was dischargeable in bankruptcy and consider competing policies in both CERCLA and the bankruptcy code); *In re Johns–Manville Corp.*, 63 B.R. 600, 602–03 (S.D.N.Y.1986) (withdrawal necessary for district court to consider whether claims against debtor occurred before or after debtor filed bankruptcy and therefore required interpretation of CERCLA and not core bankruptcy issues); *In re Combustion Equipment Assoc. Inc.*, 67 B.R. 709, 712–14 (S.D.N.Y.1986) (court considers same issues in *Johns–Manville Corp.* and withdraws reference on them); *City of New York v. Exxon Corp.*, 112 B.R. 540, 546–53 (S.D.N.Y.1990) (court finds withdrawal of a reference on determinations of environmental issues not previously made by the district court inappropriate).

Alternatively, STOP seeks a partial withdrawal of reference so that this court might (1) consider STOP's motions for relief from stay; (2) consider STOP's motion to reconsider the bankruptcy court's denial of its motions for relief from stay; and/or (3) expedite a decision on STOP's motion for proceedings supplemental against Heritage. As noted below, STOP contends that it need not achieve a withdrawal of reference to have its motion for proceedings supplemental heard by this court.

EWC contends that the sole matters remaining for decision in this action involve routine bankruptcy issues and do not concern determinations of non-bankruptcy federal law or other issues requiring involvement from a federal district court. Addi-

**418**

tionally, to the extent that STOP suggests that withdrawal is necessary for this court to address environmental conditions at the landfill, EWC argues that the citizens group has not explained "under what law the court would proceed, and how the process would be funded."

Section 157(d) of Title 28 of the United States Code provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Before a district court withdraws a bankruptcy proceeding pursuant to 157(d), cause must be shown by the moving party. *In re Pruitt,* 910 F.2d 1160 (3rd Cir.1990); *In re American Community Services, Inc.,* 86 B.R. 681 (D.Utah 1988); *Matter of Dunes Casino Hotel,* 63 B.R. 939 (D.N.J.1986); *Boatman v. C.V. Industries, Inc.,* 51 B.R. 574 (D.Conn.1985). For the reasons that follow, the court concludes that STOP has not demonstrated cause for either full or partial withdrawal of EWC's bankruptcy proceedings.

■ The essential question under § 157(d) is whether the withdrawal relates to a "core proceeding" in bankruptcy or some other "related" matter requiring analysis of other federal or state laws. *Matter of Xonics, Inc.,* 813 F.2d 127 (7th Cir.1987); *In re Sonnyco Coal, Inc.,* 89 B.R. 658 (Bankr.S.D.Ohio 1988). A proceeding that involves rights created by federal bankruptcy law, or is one which would only arise in bankruptcy, is a core proceeding; if the proceeding does not involve substantive rights created by federal bankruptcy law and is one that could exist outside of bankruptcy, it is a non-core proceeding, though it may be related to bankruptcy because of its potential effect on the debtor's estate. *Matter of Wood,* 825 F.2d

90 (5th Cir.1987); *In re Colbert,* 117 B.R. 51 (Bankr.D.Conn.1990); *St. George Island, Ltd. v. Pelham,* 104 B.R. 429 (Bankr. N.D.Fla.1989); *In re G. Weeks Securities, Inc.,* 89 B.R. 697 (Bankr.W.D.Tenn.1988).

■ A core proceeding is one that ultimately affects distribution of debtor's assets. *Howell Hydrocarbons, Inc. v. Adams,* 897 F.2d 183 (5th Cir.1990); *In re Watson–Mahaney, Inc.,* 70 B.R. 578 (Bankr.N.D.Ill.1987); *Gaslight Club, Inc. v. Official Creditors Committee,* 46 B.R. 209 (N.D.Ill.1985). Actions that do not depend upon bankruptcy laws for their existence and which could proceed in another court are not "core proceedings" within the meaning of bankruptcy law. *In re Gardner,* 913 F.2d 1515 (10th Cir.1990); *In re Manville Forest Products Corp.,* 896 F.2d 1384 (2nd Cir.1990); *In re Marine Pollution Service, Inc.,* 88 B.R. 588 (S.D.N.Y.), *rev'd on other grounds,* 857 F.2d 91 (2nd Cir.1988).

■ For withdrawal of reference, the matter must involve "substantial and material consideration" of non-bankruptcy statutes; that requirement excludes from withdrawal those cases that involve only application of non-Title 11 federal statutes to a particular set of facts. *In re Adelphi Institute, Inc.,* 112 B.R. 534 (S.D.N.Y.1990); *In re Carolina Produce Distributors, Inc.,* 110 B.R. 207 (W.D.N.C.1990); *In re Asinelli, Inc.,* 93 B.R. 433 (M.D.N.C.1988). In determining whether to withdraw reference to bankruptcy court, the court should consider whether withdrawal would promote uniformity of bankruptcy administration, reduce forum shopping and confusion, conserve debtor/creditor resources, and expedite bankruptcy process, and whether parties have requested jury trial. *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.,* 107 B.R. 34 (D.Del.1989); *In re Ramex Intern., Inc.,* 91 B.R. 313 (E.D.Pa.1988); *In re Crabtree,* 55 B.R. 130 (Bankr.E.D.Tenn.1985).

■ STOP has not justified full withdrawal. The matters pending before Judge Dees in the EWC's bankruptcy proceedings essentially involve core issues in bankrupt-

cy: whether to dismiss the bankruptcy petition; whether to lift the automatic stay for supplemental proceedings; how to distribute the debtor's remaining assets. Unlike the cases offered by STOP in support of its motion, and unlike earlier instances in these bankruptcy proceedings, Judge Dees does not face a decision concerning an environmental claim under CERCLA or RCRA; this court has previously resolved EWC's liabilities under environmental law and the priorities of the environmental obligations. *Matter of Environmental Waste Control, Inc.,* 125 B.R. 546 (N.D.Ind.1991). The bankruptcy court simply must determine the proper disposition of remaining assets in the estate and other core bankruptcy issues. While those decisions may require consideration and/or enforcement of this court's March, 1989 judgment, nothing in the record suggests that Judge Dees will be called upon to decide "substantial and material" issues outside of bankruptcy law.

The bankruptcy court has held bankruptcy proceedings concerning EWC's estate since April, 1989 and undoubtedly has gained a rich background with respect to EWC's liabilities, environmental and otherwise. STOP has not suggested how this court's joint involvement in the bankruptcy case would be of special assistance to Judge Dees or the issues he needs to resolve.

Finally, a total withdrawal of reference of the bankruptcy proceedings to this court, even were the matter considered jointly with the bankruptcy court, would not meet the needs of judicial economy. Judge Dees has presided over EWC's estate for over two years; this court's pre-judgment experience with the RCRA case is no greater. While this court has presided over several post-judgment issues to the cause, it has little knowledge of the specific, ongoing bankruptcy proceedings in Judge Dees' court. Moreover, briefing on several of the issues which STOP seeks to withdraw has already commenced in the bankruptcy court. STOP has failed to demonstrate cause for withdrawal of those matters at this juncture.

STOP's request for partial withdrawal should be denied for many of the reasons that support denial of full withdrawal. The court also notes that Judge Dees already has considered STOP's request for relief from stay once and has established a briefing schedule for expeditious consideration of the citizens group's motion for reconsideration of that request. For this court to intervene at this junction on the issue of stay would be an improper disservice to judicial economy. With respect to the motion for proceedings supplemental, this court finds, as discussed below, that proper consideration of much of that motion must be conducted if and after the automatic stay over EWC's estate has been lifted. STOP's motion for withdrawal of reference, therefore, is denied in all respects.

### III. STOP's MOTION FOR PROCEEDINGS SUPPLEMENTAL

In addition to its motion to withdraw reference, STOP has filed an independent motion for proceedings supplemental and moved for an expedited ruling on its motion for proceedings supplemental.

STOP argues that it may file a supplemental proceeding against Heritage in this court as a means for enforcing this court's March, 1989 judgment against the EWC notwithstanding the automatic stay in effect over the EWC's bankruptcy estate. For the reasons outlined below, this court disagrees, to the extent proceedings supplemental offer STOP an available avenue for any relief.

#### A. The Parties' Positions

STOP describes Heritage as a post-judgment defendant to the March, 1989 judgment in this cause. STOP contends that given the financial situation of the original defendants to this action, other potentially responsible parties (such as Heritage) must be called upon to finance the corrective action ordered by the court in March, 1989. STOP primarily cites Federal Rules of Civil Procedure 69(a) and 71 and Indiana Trial Rules 69(E) and 71 as jurisdictional support for this motion.

Heritage presents three arguments in response and one request for relief. First, Heritage argues that STOP has not satisfied the procedural requirements for bringing its motion under Fed.R.Civ.P. 69(a), Indiana Trial Rules 69 and 70, and IND. CODE § 34-1-44-5; STOP's subsequent filing of a verified motion renders that argument moot. Heritage next asserts that STOP lacks standing to bring this action because STOP's claims are stayed pending the bankruptcy court's resolution of EWC's case. 11 U.S.C. § 362. Additionally, Heritage contends that even if the court permits the proceedings supplemental to proceed, STOP's substantive claims for relief, either under RCRA or state contract law, are groundless.

Finally, in response to STOP's motion for proceedings supplemental, Heritage asks that the court impose sanctions pursuant to Rule 11 of the Federal Rule of Civil Procedure. Heritage suggests that STOP "has no legal basis to proceed here" particularly given the dismissals of STOP II and STOP III and the debtor's pending proceedings in bankruptcy.

The court treats the case's posture as though Heritage has moved to dismiss STOP's complaint in proceedings supplemental for failure to state a claim upon which relief can be granted; accordingly, the court accepts STOP's factual allegations as true and examines whether STOP can prove any set of facts that would entitle it to relief. STOP cannot do so. To the extent STOP's claims relate to Heritage's obligations to EWC, the automatic stay bars them; to the extent STOP maintains its own personal claims, those claims cannot form the basis of proceedings supplemental, and further are barred by the court's rulings in STOP II and STOP III.

### B. The Automatic Stay

Section 362(a) of Title 11 of the United States Code explains how the filing of a petition in bankruptcy court renders an automatic stay

... applicable to all entities, of ... the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim, against the debtor that arose before the commencement of the case under this title ...

11 U.S.C. § 362(a)(1). The automatic stay's purpose is to preserve the bankruptcy estate and assure equitable liquidation of all debts. *Matter of Holtkamp*, 669 F.2d 505 (7th Cir.1982); *In re Sky Group International, Inc.*, 108 B.R. 86 (Bankr.W.D.Pa. 1989); *Matter of Marker Eighty, Inc.*, 69 B.R. 561 (Bankr.M.D.Fla.1987); *In re Draggoo Electric Co. Inc.*, 57 B.R. 916 (Bankr.N.D.Ind.1986).

 The automatic stay provisions of 11 U.S.C. § 362 apply to proceedings or acts against the debtor, the debtor's property, and the property of the estate, but do not apply to acts against property which is neither the debtor's nor the estate's. *In re Petruccelli*, 113 B.R. 5 (Bankr.S.D.Cal. 1990); *Matter of Precision Colors, Inc.*, 36 B.R. 429 (Bankr.Ohio 1984). The automatic stay's scope is extremely broad and covers any type of formal or informal action against a debtor or the property of his estate. *In re Wallingford's Fruit House*, 30 B.R. 654 (Bankr.D.Me.1983); *Matter of Holland*, 21 B.R. 681 (Bankr.N.D.Ind.1982).

 When EWC filed its bankruptcy petition in April, 1989, an automatic stay formed over EWC and its property. Here, STOP seeks, among other things, to enforce a pre-petition judgment against EWC through proceedings against a non-debtor who was not a party to that judgment. To the extent those proceedings seek to enforce a judgment against the debtor by asserting the debtor's legal rights, the automatic stay prohibits those proceedings during the pendency of the debtor's bankruptcy case.

Given the broad scope of the automatic stay in a bankruptcy case, the court must find, to entertain STOP's motion for proceedings supplemental, that a proposed action either is not affected by the stay or that the action falls into an exception to the

automatic stay. Neither circumstance will save paragraphs 4 and 6 of STOP's claims in this case; whether STOP will be permitted relief from the automatic stay to proceed against the Heritage Group under those paragraphs must be left to the bankruptcy court.

Turning first to the scope of the automatic stay, paragraphs 4 and 6 of STOP's proposed action are of the type prohibited during the pendency of a bankruptcy suit. They allege that Heritage owes EWC a duty of indemnification, and that Heritage withdrew substantial moneys from EWC. An automatic stay generally is inapplicable to suits by the debtor, *Martin–Trigona v. Champion Federal Sav. & Loan Ass'n*, 892 F.2d 575 (7th Cir.1989); *In re Lithograph Corporation*, 60 B.R. 199 (Bankr.D.R.I.1986), or on debts arising after the bankruptcy petition was filed, *In re Harvey*, 88 B.R. 860 (Bankr.N.D.Ill.1988); *In re Hudson Oil Co., Inc.*, 100 B.R. 72, 77 (Bankr.D.Kan.1989), or over proceedings against a debtor's solvent codefendant, *Greene & Kellogg, Inc. v. Oxford Hospital, Inc.*, 95 B.R. 26 (E.D.Pa.1989); *Almy v. Terrace Land Development Ltd.*, 32 B.R. 390 (N.D.Cal.1983); *Royal Truck & Trailer, Inc. v. Armadora Maritima Salvadorena*, 10 B.R. 488 (N.D.Ill.1981). With respect to a creditor's claims against a nondebtor allegedly liable for the debtor's obligations, the automatic stay provision is inapplicable to personal claims that arise independently from those against the principal debtor. *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1279–1280 (7th Cir.1989); *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1348–1349 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988); *CAE Industries Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31 (S.D.N.Y.1990); *In re Meyerland Co.*, 82 B.R. 831 (Bankr.S.D.Tex. 1988).

Paragraphs 4 and 6 of STOP's motion fall into none of these exceptions. Any right to indemnification or contribution would be EWC's, not STOP's. *In re Minoco Group of Companies, Ltd.*, 799 F.2d 517 (9th Cir.1986); *In re Hudson Oil Co., Inc.*, 100 B.R. 72; *In re Lomas Financial Corp.*, 117 B.R. 64 (S.D.N.Y.1990); *Acevedo v. Van Dorn Plastic Machinery Company*, 68 B.R. 495 (Bankr.E.D.N.Y.1986). If Heritage took sums of money from EWC before the bankruptcy petitions were filed, the claim belongs to EWC, not to STOP.

STOP's assertion that it acts as a private attorney general does not defeat the application of the automatic stay. The filing of a bankruptcy petition does not operate as an automatic stay to proceedings otherwise barred under subsection (a)(1) "of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(b)(4); *see also Matter of Cash Currency Exchange, Inc.*, 762 F.2d 542 (7th Cir.), *cert. denied*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985); *Commodity Futures Trading Commission v. Co Petro Marketing Group, Inc.*, 700 F.2d 1279 (9th Cir.1983); *In re Beker Industries Corp.*, 57 B.R. 611 (Bankr.S.D.N.Y.1986); *United States v. Standard Metals Corp.*, 49 B.R. 623 (D.Colo.1985). Indeed, the EPA has used the exception provision to the automatic stay to bring an action against a debtor to enforce a non-monetary judgment under RCRA. *In re Commonwealth Oil Refining Co., Inc.*, 58 B.R. 608 (Bankr.W.D.Tex.1985).

To qualify for the exception to stay for enforcement of a state's police or regulatory power, however, the purpose of the governmental action must be the conservation of public health, safety, or welfare. *Matter of Commonwealth Oil Refining Co., Inc.*, 805 F.2d 1175 (5th Cir. 1986), *cert. denied*, 483 U.S. 1005, 107 S.Ct. 3228, 97 L.Ed.2d 734 (1987); *In re Nejberger*, 112 B.R. 714 (Bankr.E.D.Pa.), *vacated*, 120 B.R. 21 (E.D.Pa.1990). The automatic stay remains in effect if the focus of the police or regulatory power is the debtor's financial obligations, rather than the state's health and safety concerns. *In re Sampson*, 17 B.R. 528 (Bankr.D.Conn. 1982); *In re Ryan*, 15 B.R. 514 (Bankr. D.Md.1981).

STOP's motion for proceedings supplemental appears to seek a monetary judgment against Heritage in order to pay EWC's debts arising from EWC's illegal operation of the landfill. While STOP's goal might be enforcement of environmental regulations, it ultimately seeks only monetary contributions from Heritage and not any remedial action. Indeed, Fed. R.Civ.P. 69(a), by its very terms, applies only to money judgments. *Hamilton v. MacDonald*, 503 F.2d 1138, 1148 (9th Cir. 1974).

Moreover, STOP's efforts as a private citizens group to achieve enforcement of governmental regulations would not fall into the police or regulatory exception to the automatic stay. Actions brought by private individuals are not subject to the stay exception under § 362(b)(4), *EEOC v. Rath Packing Co.*, 787 F.2d 318 (8th Cir.), *cert. denied*, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986); *In re 1736 18th Street, N.W., Ltd. Partnership*, 97 B.R. 121 (Bankr.D.D.C.1989), which is confined to governmental authorities seeking to enforce regulations violated by the debtor or its agents. *In re Berry Estates, Inc.*, 812 F.2d 67 (2nd Cir.), *cert. denied*, 484 U.S. 819, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987); *City of New York v. Exxon Corp.*, 112 B.R. 540 (S.D.N.Y.1990). Indeed, in *In re Revere Copper and Brass, Inc.*, 29 B.R. 584 (Bankr.S.D.N.Y.), *aff'd*, 32 B.R. 725 (S.D.N.Y.1983), the court held that a private environmental group's action did not come within the governmental regulatory exception, even though the fines sought would be payable to the government. 29 Bankr. at 587–88.

### C. STOP's Independent Claim

STOP contends, and Heritage agrees, that paragraph 5 of STOP's motion raises a different issue. In that paragraph, STOP alleges that Heritage caused the violations that gave rise to the judgment against EWC. Those RCRA violations would produce claims personal to STOP and, so, would not be barred by the automatic stay; the claim would belong to STOP, not to EWC.

STOP employs the term "alter ego" to characterize the allegations of paragraph 5 of its motion. An automatic stay bars a creditor's "alter ego" claims under some circumstance. *See, e.g., Matter of Perkins*, 902 F.2d 1254, 1257–58 (7th Cir.1990); *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1351–52 (7th Cir.1987), *cert. denied*, 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988); *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir.1987); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). STOP argues that traditional "alter ego" law cannot be applied here, because two individuals are among the debtors involved. Without conceding that point, Heritage agrees that the claim in STOP's paragraph 5 presents no basis for application of the stay; the bankruptcy court could not award STOP the relief it seeks against Heritage under paragraph 5. Accordingly, while the court declines further comment on paragraphs 4 and 6, which remain for the bankruptcy court's determination, the court must turn to paragraph 5. That paragraph runs afoul of two insurmountable hurdles.

First, Fed.R.Civ.P. 69(a) provides that: The procedure ... in proceedings supplementary to and in aid of a judgment, and in proceedings supplementary to and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

STOP points to no applicable federal statute; accordingly, state law governs the procedure on STOP's motion, at least to the extent STOP's motion is not barred altogether by the automatic stay. Indiana procedure on proceedings supplemental, however, only allows a judgment creditor to reach the judgment debtor's interest in property. *Browning & Herdrich Oil, Inc. v. Hall*, 489 N.E.2d 988, 989 (Ind. App.1986). Thus, to the extent STOP seeks to obtain moneys that Heritage does

not owe to EWC, or in which EWC has no interest, Indiana procedure provides no remedy. To the extent the contrary is true and STOP seeks to reach moneys that Heritage owes to EWC, or in which EWC has an interest, the automatic stay bars the claim for the reasons discussed above.

▉ Second, even assuming that Indiana allowed a judgment creditor to bring an independent, personal claim against a garnishee-defendant, STOP runs afoul of the judgments in "STOP II" and "STOP III", which held that STOP could bring no such independent claim. The granting of a motion to dismiss operates as a judgment on the merits with full *res judicata* effect. *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir.1987). That STOP has appealed both judgments does not affect the judgments' preclusive effect. *Erebia v. Chrysler Plastic Products Corp.*, 891 F.2d 1212, 1215 n. 1 (6th Cir.1989); *Kurek v. Pleasure Driveway & Park District*, 557 F.2d 580, 595 (7th Cir.1977), *cert. denied*, 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979). Perhaps the Court of Appeals will reverse one or the other or both, but each retains its preclusive effect until then.

▉ In "STOP III", the court found that the judgment in this cause precluded STOP's claim against Heritage. STOP's challenges to that ruling raise no doubts concerning the ruling's preclusive effect, unless and until modified by the appellate court. "STOP III" provides a final judgment on the merits, a claim identical to that presented in paragraph 5 of this motion, and identical parties. The doctrine of *res judicata*, then, precludes the claim's resurrection, whether through a motion in proceedings supplemental or an independent suit. *Brown v. J.I. Case Co.*, 813 F.2d 848, 854 (7th Cir.), *cert. denied*, 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (1987).

### D. Conclusion

Accordingly, to the extent STOP seeks to reach moneys owed to EWC or in which EWC has an interest, the automatic stay bars the effort. To the extent STOP seeks otherwise, Fed.R.Civ.P. 69(a) does not allow it, because Indiana procedure does not allow it. Further, to the extent STOP seeks to bring the independent, personal claim presented in "STOP II" and "STOP III", the doctrine of *res judicata* precludes it from doing so. STOP's motion in proceedings supplemental must be denied.

## IV. THE CROSS–MOTIONS FOR SANCTIONS

In response to STOP's motion for proceedings supplemental, Heritage moved for sanctions pursuant to Federal Rule of Civil Procedure 11; STOP responded with a Rule 11 motion of its own.

### A. The Parties' Positions

Heritage contends that STOP's motion for proceedings supplemental is nothing more than another unsuccessful attempt to impose EWC's liability on them as attempted through "STOP I", "STOP II", and "STOP III". With respect to this most recent attempt, Heritage argues that STOP failed to research and investigate its claims before filing the motion and, accordingly, did not engage in reasonable inquiry required by Rule 11. Specifically, Heritage suggests:

STOP has no reasonable basis on which to assert any claims against respondents [Heritage] in its own behalf. Any claims that STOP might assert in behalf of EWC are stayed pursuant to pending bankruptcy proceedings, and STOP lacks standing to assert them. Consequently, STOP has no legal basis to proceed here, either in its own behalf or in behalf of EWC.

Heritage requests no specific relief, simply all appropriate sanctions against STOP for the filing of a pleading without reasonable inquiry.

After receiving Heritage's motion, STOP's attorney wrote opposing counsel indicating that he would delay his response to that motion for ten days, affording Heritage an opportunity to withdraw the motion. Several days later, STOP's counsel spoke to Heritage's counsel by telephone, at which time it was indicated that the

sanctions motion would not be withdrawn. STOP then proceeded to file a response to the motion, which included a cross-motion for sanctions.

STOP contends that Heritage's motion for sanctions is, in effect, an attempt to retaliate against the citizens group for its assistance in blocking efforts of Heritage Environmental Services to develop a hazardous waste disposal facility near Tulsa, Oklahoma. STOP has submitted excerpts from Oklahoma newspapers concerning the project for that facility and STOP's assistance to organizations opposing it. STOP suggests that Heritage attorneys were "directed by their client to pursue a motion for sanctions at all costs, rather than to fulfill the reasons why Rule 11 was amended in 1983." Accordingly, STOP suggests that Heritage's motion was filed in bad faith. STOP seeks its reasonable fees and expenses amounting to $10,050.00 in defending against Heritage's motion for sanctions.

STOP also contends that reasonable inquiry preceded its motion for proceedings supplemental and, as most issues raised in relation to the RCRA claims brought in this cause, argues for a novel application of existing law. STOP contends that this court must confront several issues of first impression in its determination concerning the proceedings supplemental.

In reply to STOP's cross-motion for sanctions, Heritage argues that no facts support the contention that the original sanctions motion was filed in bad faith. Specifically, Heritage states that its lead counsel had no knowledge of the status of the Oklahoma landfill project when the decision to file the sanctions motion was made. Heritage's attorney states that its motion was made based on a perceived violation of Rule 11 and not for any ulterior motive.

### B. Analysis

Federal Rule of Civil Procedure 11 provides in part:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

■ Rule 11 recognizes that when a party or attorney signs a paper filed with the court, he or she certifies a reasonable investigation into the facts and that the filing is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. *Hartz v. Friedman,* 919 F.2d 469, 474–475 (7th Cir.1990); *see generally Kapco Mfg. Co. v. C & O Enterprises, Inc.,* 886 F.2d 1485, 1491 (7th Cir.1989). Violation of any of these certifications mandates the imposition of sanctions. *Medical Emergency Service Associates v. Foulke,* 844 F.2d 391, 398–400 (7th Cir.1988); *Shrock v. Altru Nurses Registry,* 810 F.2d 658 (7th Cir. 1987).

■ Sanctions must be imposed with respect to complaints that violate Rule 11, *Medical Emergency Service Associates v. Foulke,* 844 F.2d at 399, and with respect to Rule 11 motions that themselves violate Rule 11, *Local 106 v. Homewood Memorial Gardens, Inc.,* 838 F.2d 958, 961 (7th Cir. 1988).

The analysis is an objective one. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, — U.S. —, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991); *Golden Eagle Distributing Corp. v. Burroughs*, 801 F.2d 1531 (9th Cir.1986); *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 205 (7th Cir.1985); *Vista Manufacturing v. Trac–4, Inc.*, 131 F.R.D. 134, 137 (N.D.Ind.1990). In effect, Rule 11 imposes a negligence standard: an objective failure to use reasonable care. *Hays v. Sony Corp. of America*, 847 F.2d 412, 418 (7th Cir.1988).

After careful examination of STOP's motion for proceedings supplemental and Heritage's motion for sanctions, the court finds that neither submission was signed in violation of Rule 11. Accordingly, this court will impose no sanctions pursuant to that rule.

The court's partial rejection of STOP's position with respect to the automatic stay does not suggest that STOP's position was meritless. STOP was rather late in bringing that issue to this court's attention. The only reference to the application of the automatic stay in STOP's motion for proceedings supplemental appears in the following last sentence of that filing: "Contemporaneous with this motion, STOP is filing conditional motions to lift automatic stay in each of the bankruptcy cases in the form attached hereto as Exhibit A."

While one must actually make the argument for an extension of existing law under the required Rule 11 showing, *In re Ronco, Inc.*, 838 F.2d 212, 219 n. 10 (7th Cir.1988), it need not be part of the pleading of a claim. Accordingly, STOP's mere failure to discuss the automatic stay issue with supporting law in its motion for proceedings supplemental does not render that filing sanctionable. The court must next consider whether the motion was filed after reasonable inquiry into the law.

STOP first addressed the automatic stay issue in its reply brief to its motion for proceedings supplemental as a response to Heritage's May 30 response. In its reply brief, STOP attempted to argue a different interpretation of the cases relied on by Heritage (and discussed above), arguing that the automatic stay traditionally will not protect non-bankrupt defendants from suit. STOP generally contends that (both in its position on the automatic stay and on the substantive issues raised by its motion for proceedings supplemental) it has taken what may be a novel approach to issues of first impression.

Given the court's discussion concerning the impact of an automatic stay on a claim against a non-debtor which arises from liability running between debtor and non-debtor, the court cannot agree with STOP that it has been dealing wholly with issues of first impression. But neither can the court agree with Heritage that STOP filed its motion for proceedings supplemental without first determining that an action against Heritage arguably could not be subject to the bankruptcy stay over EWC's estate, and that actions not subject to the stay were supported by a good faith argument for extension of existing law. While STOP found no case that says it can do what it tried to do, neither has Heritage found a case that says STOP cannot do it.

Although Rule 11 does not require litigants to have available, when filing a complaint, all facts necessary to establish a case, *Samuels v. Wilder*, 906 F.2d 272, 274 (7th Cir.1990), a litigant must inquire into the facts and the law sufficiently to avoid the filing of frivolous claims, *Beeman v. Fiester*, 852 F.2d 206, 211 (7th Cir.1988); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1340–1341 (9th Cir.1987). Rule 11 requires the signer to certify his belief, formed after reasonable inquiry, that the paper is supported by law or a good faith argument for an extension of existing law. *See, e.g., Hamer v. Lake County*, 819 F.2d 1362, 1367 (7th Cir.1987); *Thornton v. Wahl*, 787 F.2d 1151 (7th Cir.), *cert. denied*, 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986).

STOP has proffered a strong, though unconvincing, argument in support of the contention that it may proceed with the supplementary action, notwithstanding the automatic stay or the confines of Indiana

law. Within six days of Heritage's filing (a span that encompassed a holiday weekend), STOP offered an alternative reading of the cases Heritage relied on and vigorously defended against the Heritage Group's procedural and substantive objections to the motion. STOP's submissions objectively suggest that the motion for supplemental proceedings was filed after a reasonable inquiry into existing law. Moreover, STOP's concurrent filing of the motion for relief from stay indicates STOP's awareness of the procedural hurdle to its case and the citizens group's pre-filing inquiry on that issue. Indeed, the novelty of the motion for proceedings supplemental itself suggests that significant background into applicable law was a prerequisite to filing.

The Seventh Circuit recently addressed the difficulties faced by a district court when considering a request for sanctions under Rule 11. *Smith v. National Health Care Services of Peoria*, 934 F.2d 95 (7th Cir.1991). In reversing the district court's award of sanctions, the *Smith* court recognized that a party's novel, yet rational, approach is not sanctionable, provided that it recognizes contrary caselaw.

The application of Rule 11 to legal arguments requires a balance between the need to penalize those who pursue frivolous litigation and the danger of deterring litigants or attorneys from arguing for a change in the law. It is not always an easy balance for a busy court to ascertain. The argument, however, proffered by the party need not be convincing or likely to succeed. In a case such as this one, in which opposing precedent is recognized and addressed, Rule 11 sanctions should be imposed if the attorney makes a rational argument for modification of that precedent. On the other hand, the failure to acknowledge and address established, contrary caselaw could justify the imposition of sanctions.

934 F.2d at 99. Based on what this court perceives as a rational basis for filing the motion for proceedings supplemental, this court echoes the *Smith* court's position in this case.

■ While STOP's filing of its motion for supplemental proceedings may be characterized as premature in part, given the simultaneous filing of a motion for relief from stay in the bankruptcy court, the motion's timing alone does not suggest impropriety. Had STOP succeeded on its argument that the automatic stay is inapplicable to the entire proceedings supplemental motion, no relief from stay would have been necessary; as it was, paragraph 5 of STOP's motion cleared the automatic stay hurdle. In filing concurrent motions, STOP merely covered all of its bases in an attempt to resolve the matter as expeditiously as possible. The court does not find that STOP's filing of the motion for supplemental proceedings is sanctionable.

STOP's motion did not evidence that "complete disregard for the existing law" that warrants sanctions in this circuit. *Local 106 v. Homewood Memorial Gardens, Inc.*, 838 F.2d 958, 961 (7th Cir.1988). Rule 11 is designed to spare litigants the burden of contesting frivolous claims. *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 886 F.2d at 1491; *Foster v. Michelin Tire Corp.*, 108 F.R.D. 412, 415 (C.D.Ill.1985). STOP's motion for supplemental proceedings was not so frivolous as to warrant Rule 11 relief.

■ The court further declines to impose sanctions against Heritage for filing its motions for sanctions against STOP. In light of the court's ruling on STOP's motion for proceedings supplemental, it cannot find that Heritage moved for sanctions for reasons other than the belief that opposing counsel had not conducted a reasonable inquiry in this matter. The law supports Heritage's opposition to STOP's proceedings supplemental.

■ While this court has the authority to impose sanctions against a party for filing a frivolous Rule 11 motion, *General Electric Co. v. Speicher*, 877 F.2d 531, 538 (7th Cir.1989), it cannot conclude that Heritage's motion was frivolous. Moreover, this court cannot find that the Heritage Group filed its motion for sanctions in bad faith. While the court recognizes that even a colorable paper may offend the "improper purpose" prong of Rule 11, *In re TCI*, 769 F.2d 441, 445 (7th Cir.1985), the court

has no reason to doubt counsel's representations that the events in Oklahoma did not affect Heritage's decision to file the motion. The coincidence of events in Oklahoma and Indiana simply does not convince the court of a causative link. Therefore, regardless of this court's inherent ability to impose sanctions upon a party who has acted in bad faith, *Chambers v. Nasco, Inc.*, —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), and despite recognition that the party's motivation, as well as counsel's, is pertinent to Rule 11 analysis, *Business Guides, Inc. v. Chromatic Communications, Inc.*, —— U.S. ——, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991), the facts in this case do not support that relief.

■ The court understands the parties' frustration, which echoed through the arguments on the motions. Both parties seek anew relief that this court already has awarded them: STOP seeks remedial action at the landfill; Heritage seeks freedom from STOP's claims. Understandable frustration, however, does not warrant sanctions against a party, if no improper purpose is involved and the party's position is based on a reasonable inquiry into existing law. *See Matter of Wildman*, 859 F.2d 553, 560 (7th Cir.1988); *F.D.I.C. v. Tekfen Construction and Installation Co.*, 847 F.2d 440, 443–444 (7th Cir.1988).

Accordingly, the court cannot find that either STOP or Heritage has filed an improper motion or brought a frivolous claim in this court. Both motions for sanctions will be denied.

### V. CONCLUSION
For the foregoing reasons, the court:

A. DENIES STOP's motion for withdrawal of reference in all respects;

B. DENIES STOP's motion for proceedings supplemental;

C. DENIES the Heritage Group's motion for sanctions; and

D. DENIES STOP's motion for sanctions.

SO ORDERED.