**In re NATIONAL GYPSUM COMPANY, a Delaware Corporation, et al., Debtors.**

**UNITED STATES GYPSUM COMPANY, Appellant,**

**v.**

**NATIONAL GYPSUM COMPANY, a Delaware Corporation, et al., Appellees.**

**Bankruptcy No. 390–37213–SAF–11. Civ. A. No. 3:91–CV–2437–G.**

United States District Court, N.D. Texas, Dallas Division.

July 10, 1992.

Mark Ian Agee, Johnson & Gibbs, Dallas, Tex., for debtors.

Steven A. Felsenthal, pro se.

David Lee Campbell, Sheli Lauren Barnett, Hale, Spencer, Stanley, Pronske & Trust, Dallas, Tex., Jeffrey, Kelley, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., Donald E. Egan, Cook, Egan, McFarron & Manzo, Chicago, Ill., for appellant.

## MEMORANDUM ORDER

FISH, District Judge.

Before the court is the motion of United States Gypsum Company ("U.S. Gypsum") to withdraw the order referring to the bankruptcy court its proof of claim and related filings in this case. For the reasons stated below, the motion is granted.

## I. BACKGROUND

On November 12, 1991, U.S. Gypsum moved, pursuant to 28 U.S.C. § 157(d), for withdrawal of the order of reference of its Proof of Claim, filed March 15, 1991, its amended Proof of Claim, filed June 26, 1991, and the objection of the debtor National Gypsum Company ("National Gypsum") to U.S. Gypsum's claim, filed October 10, 1991, all of which are currently before the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. U.S. Gypsum's claims arise out of a patent infringement suit, *United States Gypsum v. National Gypsum Company*, Civil Action No. 89C7533, in the United States District Court for the Northern District of Illinois, Eastern Division. In that suit, U.S. Gypsum alleges, among other things, that National Gypsum infringed two patents U.S. Gypsum holds for a lightweight joint compound. In response, National Gypsum raises the defenses of best mode and prior art to the validity of U.S. Gypsum's patents and an antitrust defense to the enforceability of those patents. On September 21, 1990, National Gypsum filed a motion for summary judgment, asserting that the patents are either invalid or unenforceable. The automatic stay has prevented further prosecution of the patent infringement suit.

## II. LEGAL STANDARDS [1]

Withdrawal of an order of reference to the bankruptcy court is permitted by 28 U.S.C. § 157(d):

> The district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court *shall*, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

(emphasis added). In creating a distinction between circumstances where the district court "may" and "shall" act, Congress has provided for both permissive and mandatory withdrawal of reference. The legislative history of the statute, as well as its clear and unambiguous language, indicate that "shall" is mandatory language, and should not be construed as the permissive "may." *See In re Combustion Equipment Associates, Inc.*, 67 B.R. 709, 711 (S.D.N.Y.1986), *aff'd*, 838 F.2d 35 (2d Cir. 1988).

Section 157(d) serves a dual and interrelated purpose. It serves to insulate the 1984 bankruptcy legislation from constitutional attack, while according separate treatment to certain types of adversary proceedings. *See In re Combustion*, above, 67 B.R. at 711; 1 COLLIER ON BANKRUPTCY ¶ 3.01 (15th ed. 1992) at 3–63. In 1984, Congress amended the 1978 Bankruptcy Act in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Constitutional concerns surrounding the grant of encompassing jurisdiction to non-Article III judges crystallized in *Marathon*, where the court concluded that:

> [Section] 241(a) of the Bankruptcy Act of 1978 ... has impermissibly removed most, if not all, of "the essential attributes of the judicial power" from the Art. III district court, and has vested those attributes in a non-Art. III adjunct. Such a grant of jurisdiction cannot be sustained as an exercise of Congress'

---

1. The standards set forth by the chief judge of this district, the Honorable Barefoot Sanders, in In re: *National Gypsum Company, Aancor Holdings, Inc.*, 134 B.R. 188, 191–92 (N.D.Tex.1991), arising out of this same bankruptcy proceeding, are applicable here.

power to create adjuncts to Art. III courts.

*Id.* at 87, 102 S.Ct. at 2880.

Judicial derivation of the type of cases that warrant mandatory withdrawal, while informed by the dictates of *Marathon,* has also attempted to serve the purposes underlying Congress' creation of bankruptcy courts. Bankruptcy courts provide the expertise and efficiency intended by Congress in adjudication of bankruptcy matters, and, as a result, withdrawal cannot be based on "speculation about ... issues which may or may not arise and may or may not be germane to resolution of ... [the] proceedings." *In re White Motor Corporation,* 42 B.R. 693, 705 (N.D.Ohio 1984). To allow withdrawal upon mere speculation would create an "escape hatch through which most bankruptcy matters [could] be removed to a district court." *See In re Chateaugay Corporation,* 86 B.R. 33, 36 (S.D.N.Y.1987) (quoting remarks of Rep. Kramer, 130 Cong.Rec. H1850 (daily ed. March 21, 1984)).

■ As a result, courts have generally held that a mandatory withdrawal of reference is warranted where "substantial and material consideration" of federal statutes other than the Bankruptcy Code is "necessary" to the resolution of a case or proceeding. *See In re Johns–Manville Corporation,* 63 B.R. 600, 602 (S.D.N.Y.1986); *In re Combustion,* 67 B.R. at 711; *In re White Motor,* 42 B.R. at 703, 705; 1 *COLLIER,* ¶ 3.01 at 3–69. Before withdrawing the reference, the district court must make an "affirmative determination" that the relevant non-code legal issues will require substantial and material consideration, and the court must be satisfied that consideration of these federal laws requires "significant interpretation" on the part of the court. *In re Johns–Manville Corp.,* 63 B.R. at 602. Withdrawal of reference is not warranted, however, where it is a question of "straightforward application of a federal statute to a particular set of facts." *Id.* A party making a motion for mandatory withdrawal must therefore

establish that the proceeding involves a "substantial and material" question of

both Title 11 and non-Bankruptcy Code federal law and that the non-Code federal law has more than a *de minimis* effect on interstate commerce.

*Sibarium v. NCNB Texas National Bank,* 107 B.R. 108, 111 (N.D.Tex.1989).

## III. ANALYSIS

This court must first consider whether the mandatory withdrawal provision of 28 U.S.C. § 157(d) can apply at all to claims under the patent laws. If it can, the court must then consider (a) whether this adversary proceeding involves a substantial and material question of both Title 11 and non-Bankruptcy Code federal law; (b) whether the non-Code federal law has more than a *de minimis* effect on interstate commerce; and (c) whether the motion for mandatory withdrawal was timely.

A. *Does the Mandatory Withdrawal Provision of 28 U.S.C. § 157(d) Apply to Claims under the Patent Laws?*

■ National Gypsum objects to withdrawal of the reference, maintaining that such withdrawal is mandated only where public rights, rather than private disputes, are involved. *See In re Fresh Approach, Inc.,* 51 B.R. 412, 415 (Bankr.N.D.Tex. 1985). The language from *Fresh Approach* on which National Gypsum relies is dictum, however, and it is at odds with a more recent, more comprehensive, and more substantive test from the district court. *See Sibarium,* above, 107 B.R. at 111, and *In re National Gypsum,* above, n. 1. In both of those cases, Chief Judge Sanders concluded that withdrawal must be granted if it can be established (1) that the proceeding involves a substantial and material question of both Title 11 and non-Bankruptcy Code federal law; (2) that the non-Code federal law has more than a *de minimis* effect on interstate commerce; and (3) that the motion for withdrawal was timely. *Sibarium v. NCNB National Bank,* 107 B.R. at 111; *In re National Gypsum,* 134 B.R. at 191. These criteria permit the court to determine *ad hoc* whether the mandatory withdrawal provision applies to

*any* claim brought under Title 11 and non-Bankruptcy Code federal law. As a result, this court will apply the *Sibarium* criteria to U.S. Gypsum's claims brought under the patent laws.

B. *Does the Proceeding Involve a Substantial and Material Question of both Title 11 and Non–Bankruptcy Code Federal Law?*

■ National Gypsum concedes that the claims at issue require substantial and material consideration of Title 11.[2] What remains to be considered is whether the proceeding involves a substantial and material question of non-Bankruptcy Code federal law.

National Gypsum acknowledges that the issues in the patent infringement litigation are "complex."[3] Its objection to U.S. Gypsum's claim also includes an antitrust defense. These facts alone lead the court to conclude that the holding in *Burger King Corporation v. B–K of Kansas, Inc.,* 64 B.R. 728 (D.Kan.1986), is dispositive. That case held that a claim of trademark infringement, along with antitrust and RICO counterclaims, necessarily entailed material and substantial consideration of non-Code federal law. *Id.* at 731. The situation here is similar.

C. *Does the Non–Code Federal Law Have More Than a De Minimis Effect on Interstate Commerce?*

The court is of the opinion that if U.S. Gypsum's patent infringement claims raise an antitrust defense in response, then certainly—by implication at least—there is more than a *de minimis* effect on interstate commerce. *See Sibarium,* above, 107 B.R. 108, 111; *Income Realty & Mortgage, Inc. v. Denver Board of Realtors,* 578 F.2d 1326 (10th Cir.1978) (antitrust claim under Sherman Act requires substantial and adverse effect on interstate commerce). Moreover, it is apparent that the

nature of the alleged patent infringement is such that its effect, if infringement is found, would be on items placed in the stream of interstate commerce. Thus, the non-Code federal law would have more than a *de minimis* effect on interstate commerce.

D. *Was the Motion for Mandatory Withdrawal of the Reference Timely?*

This court agrees with U.S. Gypsum that its motion for mandatory withdrawal of the reference would have been premature until National Gypsum filed its objection on October 10, 1991. *See In re Revere Copper and Brass Corp.,* 1984 W.L. 857 (S.D.N.Y. 1984); *Matter of Lissner Corporation,* 115 B.R. 604, 608–10 (N.D.Ill.1990). Once National Gypsum's objection was filed, U.S. Gypsum filed its motion for withdrawal 33 days later, i.e., on November 12, 1991. Under these circumstances, the motion to withdraw the reference was timely.

## IV. CONCLUSION

Withdrawal of the reference of U.S. Gypsum's objection and related filings is mandatory under 28 U.S.C. § 157(d).[4] Therefore, U.S. Gypsum's motion for withdrawal of reference is GRANTED.

SO ORDERED.

2. National Gypsum's brief in opposition to motion for withdrawal of reference at 7, n. 5.

3. Affidavit of Edward A. Porter, Vice President–Administration, General Counsel and Secretary of National Gypsum, in support of debtor's re-

sponse to U.S. Gypsum's motion for modification of the automatic stay, at 3.

4. Since the court has concluded that withdrawal is mandatory, it need not consider the parties' contentions concerning permissive withdrawal.