**LIFEMARK HOSPITALS OF LOUISIANA, INC.**

v.

**LILJEBERG ENTERPRISES, INC.**

**In re LILJEBERG ENTERPRISES, INC., Debtor.**

Civ.A. No. 93–1794.
Bankruptcy No. 93–10295.

United States District Court,
E.D. Louisiana.

Oct. 19, 1993.

Kenneth Charles Fonte, Golden & Fonte, Metairie, LA, for Liljeberg Enterprises, Inc.

Brent Bennett Barriere, Phelps, Dunbar, Marlss, Claverie & Sims, New Orleans, LA, for Travelers Ins. Co.

Jan Marie Hayden, Bronfin & Heller, New Orleans, LA, for John Liljeberg.

## ORDER AND REASONS

LIVAUDAIS, District Judge.

Lifemark Hospitals of Louisiana, Inc. ("LHL") moves pursuant to 28 U.S.C. § 157(d) to withdraw from the bankruptcy court the reference of Debtor's Motion to Assume Executory Contract and LHL's defenses to such assumption. LHL argues that withdrawal is mandated under 28 U.S.C. § 157(d) because resolution of the motion to assume will require substantial and material consideration of non-Bankruptcy Code federal laws. LHL's principal argument is that the contract the debtor seeks to assume violates federal antitrust laws. In the alternative, LHL argues that permissive withdrawal of the reference is proper under 28 U.S.C. § 157(d) because the motion to assume involves consideration of "intertwined core and noncore issues," and allowing the bankruptcy court to review and decide these issues in the first instance may create a complex jurisdictional problem for a reviewing district court.

Liljeberg Enterprises, Inc. ("Liljeberg" or "debtor") argues that mandatory withdrawal of the reference is inappropriate because resolution of the motion to assume will not involve substantial and material consideration of non-bankruptcy laws. In addition, debtor argues that the antitrust claims (1) are barred by *res judicata* and/or collateral estoppel, (2) are barred by the statute of limitations, (3) are improperly asserted as counterclaims in a contested matter, and (4) can be asserted separately from the debtor's motion to assume the contract. Debtor further argues that permissive withdrawal is also inappropriate inasmuch as bankruptcy courts are better equipped to efficiently dispose of issues such as those raised in the motion to assume.

Howard Earl Sinor, Jr., Edward D. Wegmann, Jones, Walker, Waechter, Poitevent, Canere & Denegre, Moise S. Steeg, Jr., Steeg & O'Connor, New Orleans, LA, and John Flowers, Law Offices of John Flowers, Dallas, TX, for Lifemark Hospitals of Louisiana, Inc.

Douglas Scott Draper, Friend, Wilson, Draper & Bowling, New Orleans, LA, and

**24**

## ANALYSIS

The Bankruptcy Code provides that

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on a timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The first sentence of § 157(d) allows for "permissive" withdrawal of reference, while the second sentence provides for "mandatory" withdrawal.

### I. Mandatory Withdrawal

■ A court must withdraw the reference from the bankruptcy court when it is established that (1) the proceeding in the bankruptcy court involves a substantial and material question of both title 11 and non-Bankruptcy Code federal law, (2) the non-Bankruptcy Code federal law has more than a *de minimis* effect on interstate commerce, and (3) the motion for withdrawal was timely filed. *United States Gypsum Co. v. National Gypsum Co. (In re National Gypsum Co.)*, 145 B.R. 539, 541 (N.D.Tex.1992); *see also Sibarium v. NCNB Texas National Bank*, 107 B.R. 108, 111 (N.D.Tex.1989). Withdrawal of reference, however, is intended to apply only to a limited class of proceedings and is not intended to be an " 'escape hatch through which most bankruptcy matters [could] be removed to a district court.' " *In re National Gypsum Co.*, 145 B.R. at 541 (citation omitted). In determining whether mandatory withdrawal is appropriate, the Court examines the above listed factors individually.

#### A. Substantial and Material Questions of Bankruptcy *and non-Bankruptcy Laws*

■ The parties acknowledge the need to consider substantial and material questions of bankruptcy law in the motion to assume, therefore the Court's primary focus is on the extent to which non-bankruptcy law is implicated. To find that "substantial and material" consideration of non-bankruptcy laws is necessary, the Court must determine that the motion to assume "requires 'significant interpretation' [of such non-bankruptcy laws] on the part of the Court." *Sibarium*, 107 B.R. at 111 (citation omitted). Where application of non-bankruptcy federal law is merely speculative, mandatory withdrawal is not necessary. *Id.* at 113. In addition, simple application of fixed legal standards provided by such non-bankruptcy laws to a given set of facts does not necessarily trigger mandatory withdrawal. *Dow Jones/Group W Television v. NBC, Inc.*, 127 B.R. 3, 4 (S.D.N.Y.1991) (requiring withdrawal of reference only in cases where bankruptcy judge must " 'engage in significant interpretation, as opposed to simple application, of federal laws apart from the bankruptcy statutes' ") (citation omitted).

■ Here, LHL argues that its antitrust claims are "substantial and material" to resolution of the motion to assume, and are neither speculative nor peripheral. LHL claims that determining the antitrust issues will require more than "rote application [ ] of federal law" and further states that "application of the antitrust laws is not routine." LHL's Response to Amended Mem. in Opposition to Mtn to Withdraw Reference 3, 4.

■ In support of its position that resolution of the antitrust claims is necessary for deciding the motion to assume, LHL argues that "[t]he antitrust issues go to the heart of the Assumption Motion because their resolution will determine if a contract exists for the debtor to assume." LHL's Mem. in Support of Mtn to Withdraw Reference 8. Antitrust violations are a valid defense to the enforcement of a contract where the judgment of a court enforcing the contract would be enforcing the precise conduct made illegal by the antitrust laws. *Continental Wall Paper Co. v. Louis Voight & Sons Co.*, 212 U.S. 227, 256–63, 29 S.Ct. 280, 290–92, 53 L.Ed. 486 (1909). The antitrust defense is a narrow one, however, which is intended to avoid " 'mak[ing] the courts a party to the carrying out of one of the very restraints forbidden by the Sherman Act.' " *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards,*

*Inc.*, 677 F.2d 1045, 1059 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983) (quoting *Kelly v. Kosuga*, 358 U.S. 516, 520, 79 S.Ct. 429, 432, 3 L.Ed.2d 475 (1959)). Thus, if the assumption of the lease contract would constitute implicit enforcement of the alleged antitrust violations, LHL's antitrust defense may be appropriate.

■ LHL argues that the lease contract between itself and the debtor consists of an illegal tying agreement. This argument is bolstered by statements of the state trial court judge who presided over a prior contract dispute between LHL and the debtor:

> The monopolistic intent of the Clinical Pharmacy agreement is clear from the claim asserted by Liljeberg Enterprises against Lifemark for the blood derivative products purchased from sources other than Liljeberg Enterprises. This fact alone seems to underscore the monopolistic effect of the Clinical Pharmacy Agreement.

*Liljeberg Enterprises, Inc. v. Lifemark Hospitals of Louisiana, Inc.*, No. 87–12474, Civ. Dist.Ct. Orleans, Reasons for Judgment, Oct. 10, 1990, at 4 (attached as debtor's Exh. "B" to Amended Mem. in Opposition to Mtn to Withdraw Reference). Thus, it appears that the antitrust violations alleged by LHL are not minor nor collateral aspects of the lease contract, and allowing assumption would be to implicitly enforce the alleged illegal provisions. In such circumstances, where a contract may be substantially infected with antitrust illegality, the antitrust defense is appropriate. *Kaiser Aluminum*, 677 F.2d at 1059–60. As a result, resolution of the antitrust issues is necessary to deciding the motion to assume.

■ LHL asserts that because antitrust issues are involved, withdrawal of the reference is necessary. In support of its assertion, LHL cites *Michigan Milk Producers Assoc. v. Hunter*, 46 B.R. 214 (N.D.Ohio 1985). In *Michigan Milk Producers*, the court found that the Trustee's allegation that a supply agreement restrained interstate trade in milk products required "substantial and material consideration of federal antitrust" laws, thereby requiring withdrawal of the reference. *Id.* at 216. However, not every validly stated antitrust claim in a bankruptcy proceeding automatically triggers mandatory withdrawal.

In *Dow Jones/Group W*, the court found that mandatory withdrawal of reference was not required, because "as the record now stands, it seems that the case in issue will probably not require such interpretation [of antitrust laws], but rather mere application of established antitrust principles to new facts." *Dow Jones/Group W*, 127 B.R. at 5. The *Dow Jones/Group W* opinion does not provide any development of the facts which led the court to its conclusion. The court did, however, cite the "wasting nature of the debtor's property [as] an additional factor militating against withdrawal." *Id.*

■ Absent a more developed record, and without examining the merits of the instant antitrust claims, the Court is unable to say that such claims require mere routine application of established antitrust principles to new facts. The exclusive dealing aspects of the contract do not in and of themselves constitute *per se* violations of the Sherman Act. *See Jefferson Parish Hospital Dist. No. 2 v. Hyde*, 466 U.S. 2, 11–17, 104 S.Ct. 1551, 1558–60, 80 L.Ed.2d 2 (1984). LHL claims that deciding its antitrust claims will require, among other things, definition of the relevant product and geographic market area, and determinations of whether competition was unreasonably restrained by a tying or exclusive dealing agreement, whether a particular hospital lease constituted a tying product, and whether debtor's conduct constituted an unfair trade practice. Determination of LHL's antitrust defenses to the motion to assume will involve more than "rote application" of established antitrust law.

Because determination of the antitrust claims is necessary in determining whether a contract exists to be assumed in the first place, and because determination of these antitrust claims requires more than routine application of established law, the Court finds that "substantial and material" consideration of non-bankruptcy federal law is needed for the resolution of the motion to assume. However, the debtor argues that

the Court need not consider the antitrust defenses and counterclaims raised by LHL for other reasons as well. Debtor argues that LHL's antitrust claims are improperly raised because they (1) are barred by *res judicata* and/or collateral estoppel, (2) are barred by the statute of limitations, (3) are improperly asserted as counterclaims in a contested matter, and (4) should be asserted separately from the debtor's motion to assume the contract. The Court addresses these contentions below.

### 1. Preclusion

▮ Debtor argues that LHL is precluded in this action from raising antitrust claims because "Lifemark admitted that it could have and should have asserted the federal and state antitrust claims as a defense to the state court proceeding [for declaratory judgment and damages]." Debtor's Amended Mem. in Opposition to Mtn to Withdraw Reference 9. However, regardless of LHL's or debtor's belief that such claims "could have and should have" been brought in state court, they could not have been. Jurisdiction over federal antitrust law suits exclusively with the federal courts. 15 U.S.C. § 15; *see also Hayes v. Solomon*, 597 F.2d 958, 984 (5th Cir.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980) ("federal courts have exclusive jurisdiction over federal antitrust claims"). In *Hayes*, the Fifth Circuit held that

> [t]he ... state court had no jurisdiction to consider the alleged federal antitrust violations arising out of the breach of the lease. Therefore, we hold that the state court suit is not a *res judicata* bar to this federal antitrust action.

*Id.* at 985. *See also Kurek v. Pleasure Driveway and Park District*, 583 F.2d 378, 379 (7th Cir.1978), *cert. denied*, 439 U.S. 1090, 99 S.Ct. 873, 59 L.Ed.2d 57 (1979) (federal antitrust claims not precluded despite defendants' argument that they were adjudicated in state court because jurisdiction over federal antitrust suits is exclusively in federal courts). Similarly here, *res judicata* does not preclude the instant antitrust claims. Furthermore, because the antitrust issues were not—and could not have been—

litigated in the state court action, collateral estoppel is inapplicable.

### 2. Statute of Limitations

▮ Debtor next argues that LHL's antitrust claims are barred by the four-year statute of limitations provided by the Sherman Act because the lease which is the subject of the motion to assume was executed over four years ago. 15 U.S.C. § 15b. LHL agrees that the four-year statute of limitations applies, but argues that there exists a continuing violation such that a cause of action accrues with each alleged violation, not just on the original execution of the lease.

The general rule in the Fifth Circuit is that "an antitrust cause of action accrues each time the defendant commits an act that injures [the] plaintiff." *Bell v. Dow Chemical Co.*, 847 F.2d 1179, 1186 (5th Cir.1988). However, the mere acceptance of payments made pursuant to an illegal contract does not necessarily establish a continuing violation. *Kaiser Aluminum*, 677 F.2d at 1052–53. Whether the contract between LHL and the debtor, and the actions taken by the parties subsequent to execution of the contract, constitute continuing violations are questions going to the merits of the antitrust allegations and are not apparent from the face of the pleadings. This being so, the Court does not at this juncture find that the antitrust claims are barred by the statute of limitations.

### 3. Antitrust Claims are Improper Counterclaims

▮ Debtor argues that LHL's antitrust claims are improperly raised as counterclaims to a contested matter. Bankruptcy Rule 6006 provides that "[a] proceeding to assume ... an executory contract, including an expired lease, ... is governed by Rule 9014." Fed.R.Bankr.P. 6006. Debtor argues that the rule governing counterclaims in bankruptcy matters (Rule 7013) is not among those listed in Rule 9014 as applying to contested matters, and therefore the antitrust claims should be dismissed. However, debtor appears to misunderstand the full nature of LHL's claims. LHL raises its antitrust claims not only in the form of counterclaims, but also in the form of *defenses* to the assumption motion. While Rule 9014 states

that no response is *required*[1] to a motion to assume, that does not mean that no response is *allowed.* Thus, Rule 9014 does not operate to bar defenses to a motion to assume a contract. The Court is persuaded by LHL's argument that antitrust allegations tending to demonstrate the illegality of a contract are valid defenses to the assumption of that contract.

### 4. The Antitrust Claims can be Asserted Separately

As discussed above, the antitrust claims advanced by LHL are not merely counter-claims, but are also defenses to the motion to assume. As such, they are integral to a consideration of the motion to assume. It is illogical that defenses to a motion could be brought separate and apart from the proceeding on the motion itself. Therefore, debtor's argument to that end must fail.

### B. *Effect of non-Bankruptcy Laws on Interstate Commerce*

 Courts generally hold that antitrust claims, by their very nature, have a greater than *de minimis* effect on interstate commerce. *See, e.g., In re National Gypsum Co.,* 145 B.R. at 542 ("if U.S. Gypsum's patent infringement claims raise an antitrust defense in response, then certainly—by implication at least—there is more than a *de minimis* effect on interstate commerce"); *Dow Jones/Group W,* 127 B.R. at 4 ("antitrust laws clearly do concern interstate commerce"). Accordingly, the Court finds that LHL's antitrust claims have a greater than *de minimis* effect on interstate commerce.

### C. *Timeliness of LHL's Motion to Withdraw*

Debtor filed its motion to assume in the bankruptcy court on March 26, 1993. LHL filed its motion to withdraw the reference on May 17, 1993—fifty-two days after the motion to assume was filed, but prior to hearing on the motion to assume. The Court does not find this delay was unreasonable.

Therefore, the filing of the motion to withdraw reference was timely.

Having determined that "substantial and material" consideration of non-bankruptcy laws is necessary to resolution of the motion to withdraw reference, and because antitrust violations have a greater than *de minimis* effect on interstate commerce, and finding that such motion to withdraw was timely filed, mandatory withdrawal of reference pursuant to 28 U.S.C. § 157(d) is required.

### II. Permissive Withdrawal

Having found mandatory withdrawal necessary, the motion for permissive withdrawal is moot.

Accordingly,

**IT IS ORDERED** that LHL's motion for withdrawal of reference on the motion to assume (Rec.Doc. No. 1) be and is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that counsel for the parties to the motion to assume attend a **STATUS CONFERENCE** in Chambers, C–405, on **FRIDAY OCTOBER 29, 1993 at 3:00 P.M.**

---

1. Bankruptcy Rule 9014 provides in pertinent part that "[i]n a contested matter ..., relief shall be requested by motion.... No response is re-quired under this rule unless the court orders an answer to the motion." Fed.R.Bankr.P. 9014.