**In re RIMSAT, LTD., Debtor.**

Paul E. UNDERWOOD, Trustee in Bankruptcy for Rimsat, Ltd., and The Official Creditors' Committee of Rimsat, Ltd., Plaintiffs,

v.

The RUSSIAN SPACE AGENCY, Intersputnik, a/k/a International Organization of Space Communications, Informcosmos Joint Stock Company, a/k/a Economic Association Informcosmos, and NPO PM Stock Company, Defendants.

Civil No. 1:95cv353.

United States District Court, N.D. Indiana, Fort Wayne Division.

Nov. 7, 1995.

Mark A. Warsco, Warsco and Brogan, Fort Wayne, IN, for Paul E. Underwood.

R. David Boyer, Helmke Beams Boyer and Wagner, Fort Wayne, IN, Dennis M. O'Dea, Keck Mahin and Cate, New York City, for Official Creditors' Committee of Rimsat, Ltd.

Ward W. Miller, Bloom Bloom More and Miller, Fort Wayne, IN, Bruno Ristau, Ristau and Abbell, Washington, DC, Richard S. Perelman, Ballard Spahr Andrews and Ingersoll, Philadelphia, PA, for Russian Space Agency, Intersputnik, Informcosmos Joint Stock Company and NPO PM Stock Company.

### ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on a motion for withdrawal of reference from the bankruptcy court, filed by the defendants, which motion was transmitted to this court on October 20, 1995. The Recommendation of the Bankruptcy Court was filed on November 3, 1995. For the following reasons, the motion for withdrawal of reference will be granted.

### Discussion

Title 28 U.S.C. § 157(d), governs the withdrawal of the jurisdiction conferred upon bankruptcy judges. Such a withdrawal may be mandatory or discretionary. The defendants claim that withdrawal is mandatory in this case; alternatively, the defendants argue that this court should withdraw the reference as a matter of discretion.

On November 3, 1995, Bankruptcy Judge Grant submitted a "Recommendation Concerning Motion for Withdrawal of Reference," pursuant to N.D.Ind.L.B.R. 200.1(b)(1)(c). For the reasons which are thoroughly and carefully set forth in Judge Grant's Recommendation, this court finds

that mandatory withdrawal is not appropriate in this case.

This court also agrees with Judge Grant's analysis with respect to discretionary withdrawal and adopts his conclusion that discretionary withdrawal is appropriate in the present case. As Judge Grant has set forth in more detail, this case presents a potential conflict between the Bankruptcy Code and the Foreign Sovereign Immunities Act. Additionally, at present, issues of international comity and foreign policy appear to exist. Thus, as a discretionary matter, this court will grant the defendants' motion to withdraw reference.

### Conclusion

For all of the foregoing reasons, the defendant's motion to withdraw reference is hereby GRANTED.

ATTACHMENT

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF INDIANA

FORT WAYNE DIVISION

In re: CASE NO. 95–10120

RIMSAT, LTD.

DEBTOR

PAUL E. UNDERWOOD, TRUSTEE

OFFICIAL CREDITORS COMMITTEE OF

RIMSAT, LTD.

PLAINTIFFS

v.

THE RUSSIAN SPACE AGENCY, et al

DEFENDANTS

PROC. NO. 95–1104

*RECOMMENDATION CONCERNING MOTION FOR WITHDRAWAL OF REFERENCE*

ROBERT E. GRANT, Bankruptcy Judge.

At Fort Wayne, Indiana, on November 3, 1995.

Plaintiff's complaint in this adversary proceeding is a seemingly simple request to enforce the automatic stay of 11 U.S.C. § 362. Three of the defendants, however, The Russian Space Agency, Intersputnik, and Informcosmos Joint Stock Company contend that they are foreign states, as defined by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 et seq.[1] On this basis, they have asked the district court to withdraw the reference as to this adversary proceeding, so that the issues presented by it may be resolved in the district, rather than the bankruptcy, court. The bankruptcy judge is submitting this recommendation pursuant to N.D.Ind.L.B.R. 200.1(b)(1)(c).

### Status of the Case

This adversary proceeding was initiated on August 30, 1995 with the plaintiff/trustee's verified complaint for injunctive relief and damages. On the same date the trustee also filed a verified motion for a temporary restraining order. The motion was granted and a temporary restraining order was issued, without notice, on August 30. In doing so, the court also scheduled a hearing for September 7, 1995, for the purpose of considering whether or not a preliminary injunction should be issued. At the hearing of September 7, defendants failed to appear and, after having received plaintiff's evidence, the court granted the motion and a preliminary injunction was issued on that date. At this hearing, the court also granted a motion to intervene, as a party-plaintiff, which had previously been filed by the official creditors committee.

On September 8, 1995, plaintiffs filed a motion for contempt, seeking to hold the defendants in contempt of court for their failure to comply with the temporary restraining order. This motion was scheduled for a hearing on September 28, 1995. The day prior to the contempt hearing, defen-

---

1. Subject to a number of exceptions, this Act makes foreign states, their agencies, and instrumentalities "immune from the jurisdiction of the courts of the United States and of the States. . . ." 28 U.S.C. § 1604.

dants filed the present motion to withdraw reference, along with a separate motion to stay proceedings pending the district court's determination of the motion to withdraw. At the contempt hearing of the 28th, defendants' motion to stay was denied. The court then proceeded to receive evidence concerning plaintiff's motion for contempt, limited to the issues relating to defendants' knowledge of and compliance with the court's order and the sanctions needed in order to compel compliance. Although the defendants object to the court's subject matter and/or personal jurisdiction, those issues are to be submitted in connection with their forthcoming objections to jurisdiction. Pursuant to the court's order of September 29, 1995, these objections, together with briefs and other materials in support thereof, are to be filed and served on or before October 30, 1995. Pursuant to the local rules of this court, N.D.Ind. L.B.R. B–702, plaintiffs have thirty days thereafter within which to respond and the defendants will have a further fifteen days for any reply. The court's order of September 29 also indicates that, unless defendants' forthcoming jurisdictional objections are well-taken, the court will proceed to determine the question of contempt and, in the event they are found to be in contempt of court, schedule further proceedings by separate order to determine the damages, if any, plaintiff is entitled to recover as a result thereof.

### Withdrawal of Reference

Jurisdiction over cases under title 11 and proceedings arising under, in, or related to cases under title 11 is vested in the district court. 28 U.S.C. § 1334(a) & (b). Despite this Congressional grant of jurisdiction to the district courts, they are authorized to refer their bankruptcy jurisdiction to the bankruptcy judges, 28 U.S.C. § 157(a), and this district has done so through N.D.Ind.L.B.R. 200.1. The district court, nonetheless, retains the complete authority to withdraw all or part of the jurisdiction it conferred upon the bankruptcy judges, either on its own initiative or the motion of a party. Pursuant to 28 U.S.C. § 157(d):

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

The first sentence of this subsection vests the district court with discretion in deciding whether or not the reference should be withdrawn. The second sentence requires withdrawal of the reference under certain circumstances.

Defendants have premised their motion for withdrawal of reference on both provisions of § 157(d). As the moving parties, it is they who bear the burden of proving that the reference should be withdrawn. *U.S. (EPA) v. Environmental Waste Control, Inc.,* 131 B.R. 410, 418 (N.D.Ind.1991), *aff'd, Supporters to Oppose Pollution, Inc. v. Heritage Group,* 973 F.2d 1320 (7th Cir.1992).

Where a motion seeks both discretionary and mandatory withdrawal, the reported decisions generally address the issues in reverse order from that set forth in the statute. The courts first consider whether or not withdrawal of the reference is mandatory under the second sentence of § 157(d). If it is not, they then proceed to consider whether or not discretionary withdrawal would be appropriate. This court's recommendation will follow this format and, because it feels that mandatory withdrawal is not required, both mandatory and discretionary withdrawal will be addressed.

### Mandatory Withdrawal

Two requirements must be met before the district court is required to withdraw the reference under § 157(d). Resolution of the proceeding must require "consideration of *both* title 11 *and* other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added). It is clear from both the legislative history and the reported decisions

that this portion of the statute is to be interpreted narrowly so that it does not "become an escape hatch through which most bankruptcy matters will be removed to a district court[.]" 130 Cong.Rec. H1849, 1850 (daily ed. March 21, 1984) (remarks of Rep. Kramer and Rep. Kastenmeier). Despite this universally accepted initial premise, the reported decisions have yet to agree on the standard which should be applied in deciding whether or not withdrawal of· the reference is required. At least two and perhaps three different approaches have developed. They differ from each other in the degree to which they require an interplay between or consideration of both title 11 and other laws of the United States.

The more liberal line of authority seemingly ignores the language of the statute, which requires "consideration of *both ... and ...*" and considers it "enough for mandatory withdrawal when the case requires substantial and material considerations of nonbankruptcy federal statutes regulating activities affecting interstate commerce." *In re Donald G. Atteberry, DVM, P.A.,* 164 B.R. 668, 669 (D.Kan.1994). At the other end of the spectrum, a more rigorous approach has added to the language of the statute, so that the fact that resolution of the proceeding requires consideration of both title 11 and other federal laws is not, by itself, sufficient. *In re Merryweather Importers, Inc.,* 179 B.R. 61, 62 (D.Md.1995). Instead, in addition to considering title 11, withdrawal is "only necessary if the proceeding [also] requires a significant interpretation of a federal statute, in such situations as a conflict between statutes, a case of first impression, or a constitutional challenge", *In re Mahlmann,* 149 B.R. 866, 870–71 (N.D.Ill.1993); with the result that withdrawal is not required if the bankruptcy court need do nothing more than "... apply a well established federal law to particular facts." *Id., see also Environmental Waste Control,* 131 B.R. at 418; *Merryweather,* 179 B.R. at 62. It is the parties' differing preferences for one standard or another, and the resulting difference of opinion over the degree to which both title 11 and non-title 11

statutes must be considered, that leads to their difference of opinion over whether or not withdrawal of the reference is required.

In this case the district court does not need to choose between the conflicting approaches to mandatory withdrawal in order to resolve the issues raised by defendants' motion. Regardless of which approach the court would choose, the present situation does not involve "other laws of the United States *regulating organizations or activities affecting interstate commerce.*" 28 U.S.C. § 157(d) (emphasis added).

Mandatory withdrawal is not required any and every time the bankruptcy court is presented with the need or opportunity to consider federal law other than title 11. It is only where the non-title 11 federal law regulates organizations or activities affecting interstate commerce that withdrawal is required. The Foreign Sovereign Immunities Act is not such a law. It is, instead, part of title 28 of the United States Code, which deals with the organization, structure, jurisdiction and procedure of the Courts of the United States.

Few decisions addressing mandatory withdrawal have focused on the interstate commerce aspect of § 157(d). The reason for this is that in almost all of the reported decisions dealing with mandatory withdrawal, the rights and duties of the parties toward one another were initially founded upon federal law, other than title 11, so that it provided a basis for the claim or defense in issue and was intertwined with resolution of the ultimate merits of the claim. Here, by contrast, the non-title 11 federal law relied upon as a basis for mandatory withdrawal is merely a threshold issue, involving the court's jurisdiction and whether or not the defendants have been properly served with process.

The few decisions that have touched upon the nature of the non-title 11 federal law contemplated by § 157(d) have taken a very literal approach to the statutory language. In doing so, they have used as their point of embarkation the statute's legislative history. The most relevant committee report for the statute is Senate Report No. 55, 98 Cong., 1st Sess. *In re White Motor Corp.,* 42 B.R.

693, 697 (N.D.Ohio 1984). In discussing proposed language similar to that of the mandatory withdrawal provisions of § 157(d), the report stated that the language "federal laws regulating organizations or activities affecting interstate commerce" was to "be construed narrowly—basically to cover only those organizations or activities which *immediately and directly* affect interstate commerce." *Id.*, at 699 (emphasis added) (*quoting* S.Rep. No. 55, 98th Cong., 1st Sess. 16). During the floor debates the question was raised concerning the nature of the non-title 11 federal law referred to in § 157(d).

MR. KRAMER:

\*        \*        \*        \*        \*        \*

My question is this: The language "activities affecting interstate commerce" is very broad language. What kinds of situations or circumstances does the gentlemen intend to cover here? Or will this language become an escape hatch through which most bankruptcy matters will be removed to the district court?

MR. KASTENMEIER: I thank the gentlemen for his question. This language is to be construed narrowly. It would, for example, mean related causes which may require consideration of both title 11 issues and other Federal laws including cases involving the National Labor Relations Act, civil rights laws, Securities and Exchange Act of 1934, and similar laws. 130 Cong.Rec. H1849, 1850 (daily ed. March 21, 1984) (remarks of Rep. Kramer and Rep. Kastenmeier).

■ Two decisions that have directly grappled with the interstate commerce aspects of § 157(d) have concluded that the only federal laws

... meant to be subject to mandatory withdrawal are those that (1) are in the first instance exclusively administered and enforced by a federal agency and (2) provide for exclusive review by the federal judiciary of the enforcing agency's decisions. *In re Blackman*, 55 B.R. 437, 450 (Bankr.D.C.1985).

Use of the word "regulating" would appear to imply a function of a governmental unit

with respect to the preservation or enforcement of a public right. . . .

\*        \*        \*        \*        \*        \*

[T]he examples cited by Representative Kastenmeier in his explanation of Section 157(d) provide for active intervention by government agencies occupying a watchdog role pursuant to a regulatory mandate. *In re Fresh Approach, Inc.*, 51 B.R. 412, 415 (Bankr.N.D.Tex.1985).

While these two decisions probably go too far when they attempt to limit withdrawal to situations involving the active oversight or intervention of a federal regulatory agency, they are in harmony with the concept that there must be a direct impact upon or relationship between interstate commerce and the non-title 11 federal statute which forms the basis for the claim for the withdrawal. Mandatory withdrawal requires "that the non-Code federal law ha[ve] more than a *de minimis* effect on interstate commerce." *In re Anthony Tammaro, Inc.*, 56 B.R. 999, 1007 (D.N.J.1986); *In re National Gypsum Co.*, 145 B.R. 539, 541 (N.D.Tex.1992).

■ The provisions of title 28 of the United States Code should not be considered to be "other laws of the United States regulating organizations or activities affecting interstate commerce" within the scope of § 157(d). They do not immediately or directly affect interstate commerce. At best, they should be viewed as having only a *de minimis* effect upon it. Indeed, to do otherwise would create a situation in which withdrawal of the reference would be mandatory in many seemingly anomalous situations. For example, any challenge to the court's subject matter jurisdiction under § 1334 or a dispute concerning whether a particular proceeding was or was not a core proceeding, as defined by 28 U.S.C. § 157(b), would automatically become subject to mandatory withdrawal of the reference. It would seem to this court that § 1334 and § 157 have at least as much, if not more, impact upon interstate commerce than does the Foreign Sovereign Immunities Act.

■ The requisite immediate or direct effect upon interstate commerce does not exist unless, at a minimum, non-title 11 federal law governs the underlying rights and duties of the parties. Thus, mandatory with-

drawal should be limited to those situations where the non-title 11 federal law which forms the basis for the request for withdrawal will play a role in determining the *merits* of the action and not threshold or preliminary issues.

This court's reading of § 157(d) would limit mandatory withdrawal to those situations where, in addition to considering title 11, other federal law has a *direct* impact upon interstate commerce and will play a role in determining the underlying merits of the parties' dispute; not just a hurdle to be overcome on the way to a resolution of those issues. Such an approach is consistent with the language of § 157(d), which indicates that non-title 11 federal law must be considered in connection with the *"resolution* of the proceeding." Congress' use of the word "resolution" connotes some degree of finality, such that, once the issue is decided, the dispute between the parties will be at an end. The Foreign Sovereign Immunities Act plays no such role in bringing the present dispute to an end. Instead, it may only provide an answer as to where the battle will be fought; in the courts of the United States or elsewhere and, if in the United States, how the defendants should be served with process. The underlying issue of whether or not the defendants have violated the automatic stay of 11 U.S.C. § 362 will remain, whatever the court's decision with regard to the Foreign Sovereign Immunities Act.

This court's conclusion, that the provisions of title 28, in general, and the Foreign Sovereign Immunities Act, in particular, are not laws regulating organizations or activities affecting interstate commerce, does not conflict with the court's decision in *Atteberry,* 164 B.R. 668, relied upon by the defendants. That decision did not specifically consider whether the Foreign Sovereign Immunities Act was within the scope of the interstate commerce provisions of § 157(d). Furthermore, in that case withdrawal was sought based not only upon the Foreign Sovereign Immunities Act, but also upon the Foreign Corrupt Practices Act of 1977, 15 U.S.C. 78dd–1, et seq. As a result, the district court in that case was presented with other federal laws dealing not only with threshold or preliminary issues of subject matter jurisdiction but also with laws which were more intimately associated with the underlying merits of the entire action.

If the district court concludes that the Foreign Sovereign Immunities Act is within the scope of the laws implicating interstate commerce, the court will have to resolve the conflicting standards the parties urge upon it with regard to mandatory withdrawal. This court suggests that both the liberal approach advocated by the defendants and the restrictive approach advanced by the plaintiffs are inappropriate.

Under the defendants' approach, withdrawal is required any time federal law other than title 11 has a role to play in the proceeding, regardless of whether title 11 issues are implicated at all. *See, e.g., In re Contemporary Lithographers, Inc.,* 127 B.R. 122, 127–28 (M.D.N.C.1991). This approach fails because it represents a significant departure from the language of the statute, 1 *Collier on Bankruptcy,* ¶ 3.01 pp. 3–70 (15th ed.), which requires consideration of *"both* title 11 *and* other [federal] laws." It ignores the requirement that title 11 issues must also play a role in the resolution of the proceeding.

The approach advocated by the plaintiffs is also a departure from the language of the statute. It would limit withdrawal to proceedings where, in addition to considering title 11 issues, the court was required to confront non-title 11 issues in situations requiring something more than the routine application of federal law to a particular set of facts. Withdrawal would be necessary only where the court was confronted with a complex question, an issue of first impression, a conflict between statutes, or a constitutional challenge. This standard involves significant additions to the statutory language, which says nothing about the quality or complexity of the non-title 11 issues presented. The statute requires only that such issues be considered.

A proper approach to mandatory withdrawal under § 157(d) must recognize and give effect to each operative word of the statute—"resolution", "consideration", "both ... and", and "interstate commerce." This

requires the court to look at the issues which are presented by the merits of the underlying claim and defense and not just whether non-title 11 issues are swirling around somewhere in the case. The non-title 11 issues the court will be called upon to consider must be "substantial and material." *White Motor Corp.*, 42 B.R. at 704. This does not mean that they have to present legal questions of cosmic proportions. Instead, it should be sufficient that a decision on the merits will require the court to determine the rights and duties of the parties under non-bankruptcy federal law. Having done so, a decision in the matter should then require the court to proceed to determine how or whether title 11 issues affect the outcome. Consequently, withdrawal should not be mandatory where non-bankruptcy law alone is sufficient to provide the answer. Similarly, if only title 11 issues are implicated withdrawal would not be required. Thus, even though the rights of the parties may be governed by federal law, if those rights have been already determined, for example by a previous judgment, so that the only question becomes how does title 11 impact upon those rights, withdrawal would not be required. *See, e.g., Environmental Waste Control*, 131 B.R. at 419; *In re Chateaugay Corp.*, 109 B.R. 613, 620 (S.D.N.Y. 1990), *appeal dismissed and remanded*, 924 F.2d 480 (2nd Cir.1991). All of this must then be tempered with the recognition that the non-title 11 law in question must directly affect interstate commerce.

█ This approach represents a middle ground between the polar extremes advocated by the parties, combining aspects of both standards. It results in a relatively narrow class of cases subject to mandatory withdrawal. The district court will be required to withdraw the reference only where the merits of claims and defenses presented to it involve open and unresolved issues of both title 11 and non-title 11 statutes directly implicating interstate commerce.

The current proceeding does not fulfill this requirement. In addition to failing to have a direct affect upon interstate commerce, the non-title 11 federal statutes in question do not involve the underlying merits of the present dispute. While non-title 11 issues are presented, they are merely preliminary or threshold questions.

### Discretionary Withdrawal

█ If the district court determines that withdrawal is not mandatory, it should proceed to determine whether or not the defendants have demonstrated cause for it to exercise its discretion in favor of withdrawing the reference associated with this adversary proceeding. As in other areas where the court's discretion is involved, this can involve any number of considerations. *Met–Al, Inc. v. Hansen Storage Co.*, 157 B.R. 993, 1002 (E.D.Wis.1993). Among the most common are

> whether withdrawal would promote uniformity of bankruptcy administration, reduce forum shopping and confusion, conserve debtor/creditor resources, and expedite bankruptcy process, and whether parties have requested jury trial. *Environmental Waste Control*, 131 B.R. at 418.

In this case, these considerations are neutral. They do not weigh heavily either in favor of or against withdrawal. There are, however, two factors that the district court should consider in connection with discretionary withdrawal that may be appropriate to this case.

█ If the district court denies the motion for mandatory withdrawal, it would be appropriate to consider why it did so. This is especially so if the district court adopts this court's recommendation concerning the interstate commerce requirements of mandatory withdrawal and this court's position that both the title 11 and non-title 11 issues must relate to the merits of the underlying claim and defense. In other words, the more restrictive the district court's approach to the requirements of mandatory withdrawal, the more flexibility it may want to inject into the discretionary withdrawal process. This is not to suggest that the district court should adopt a restrictive approach to mandatory withdrawal and then almost automatically grant discretionary withdrawal. Instead, the court is merely suggesting that the district court evaluate in the discretionary withdrawal process how close a fit there may be

be between the present case and more liberal approaches to mandatory withdrawal. The more rigorous the district court's attitude towards mandatory withdrawal, regardless of the interplay between title 11 and non-title 11 issues, the more it may want to consider the nature of that interplay in deciding whether or not to exercise its discretion in favor of withdrawing the reference.

The court makes this observation because it has admittedly recommended a more restrictive and, some might claim, technical approach to many aspects to mandatory withdrawal than that taken by a majority of the courts considering the issue; particularly with regard to the requirement of a direct impact upon interstate commerce and the requirement that both title 11 and non-title 11 issues play a role in determining the ultimate merits of the claim and defense at issue. While this case admittedly presents both title 11 and non-title 11 issues, this court has, nonetheless, recommended that mandatory withdrawal be denied because the non-title 11 issues do not involve laws having a direct affect upon interstate commerce and do not implicate the merits of the claim and defense. A district court adopting a more liberal approach to withdrawal of the reference than that advocated by this bankruptcy judge, would undoubtedly be inclined to grant mandatory withdrawal. *See, e.g., Atteberry,* 164 B.R. 668.

■ This case also presents the potential for a conflict between the Bankruptcy Code and the Foreign Sovereign Immunities Act, in the event that the district court would determine that the defendants do not qualify for any of the exceptions to immunity. The automatic stay of 11 U.S.C. § 362(a) is incredibly broad and applies to any "entity." As defined by the Bankruptcy Code, "entity" includes "a governmental unit", 11 U.S.C. § 101(15), which includes a "foreign state; department, agency, or instrumentality of ... a foreign state; or other foreign government." 11 U.S.C. § 101(27). Thus, despite the fact that the defendants may be foreign

states as defined by either the Bankruptcy Code or the Foreign Sovereign Immunities Act, they are, nonetheless, subject to the automatic stay of 11 U.S.C. § 362.[2] Consequently, if the defendants are foreign states and do not come within any of the exceptions of the Foreign Sovereign Immunities Act, the court will be presented with a bit of a conundrum. In enacting the Bankruptcy Code, Congress specifically prevented foreign states from, *inter alia,* taking "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Despite this federal right, are the courts of the United States to be precluded from enforcing it? Thus, there is the potential for a direct conflict between the rights and obligations created by the automatic stay of § 362(a) and the ability of the court to enforce those rights and obligations. Were it not for this court's narrow reading of "interstate commerce" and "resolution," the potential for this conflict would have persuaded it to recommend mandatory withdrawal.

■ A further consideration which the district court should evaluate in connection with discretionary withdrawal is the defendants' argument premised upon international comity. If the defendants or any of them are foreign states and subject to the court's jurisdiction, there is undoubtedly some meaningful benefit to be derived from having the matter proceed in the district court. If, after considering the issues raised by the Foreign Sovereign Immunities Act, the district court would determine that the defendants are not foreign states, it would seem that, should it want to do so, there would be no theoretical obstacle to sending the matter back to the bankruptcy court at that time, when issues of international comity and foreign policy implications would no longer exist.

### Conclusion

■ In an odd sort of way, this discourse causes the bankruptcy court to make the same recommendation to district court as

---

**2.** At the contempt hearing, defendants' counsel conceded that the defendants are "entities" as

defined by the Bankruptcy Code.

was made in *Atteberry*, 164 B.R. 668. The bankruptcy judge recommends that defendants' motion for mandatory withdrawal of the reference be denied, but that the district court grant their motion for discretionary withdrawal. Whatever its decision, the issues raised in this adversary proceeding need to be determined with a reasonable degree of dispatch, since they have a very significant impact upon the efforts to reorganize the debtor.