In the Matter of Linda V.
MAYER, Debtor.

Linda V. MAYER

v.

BELLSOUTH TELECOMMUNICATIONS
d/b/a South Central Bell.

Civil Action No. 96–1782.
Bankruptcy No. 13233.
Adversary No. 95–1220.

United States District Court,
E.D. Louisiana.

July 30, 1996.

Linda Venus Mayer, pro se.

Nan Roberts Eitel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for BellSouth Telecommunications.

Claude C. Lightfoot, Jr., Metairie, LA, for Cynthia Lee Traina.

## *ORDER AND REASONS*

BERRIGAN, District Judge.

Pending before the Court is Debtor Linda V. Mayer's motion to withdraw reference from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). The matter was submitted on a previous date without oral argument. Having reviewed the submissions of the parties, the record and the applicable law, the motion is **DENIED**.

### I. Background

This matter arises as a result of Debtor's petition for relief under Chapter 7 of the Bankruptcy Code filed on August 31, 1995. BellSouth Telecommunications ("BellSouth") alleges that it learned of the Bankruptcy on or about October 3, 1995. On that same date, BellSouth alleges that it sent Debtor a letter requesting an adequate assurance deposit, pursuant to 11 U.S.C. § 366(b), of $75 to be made no later than October 23, 1995. Also on that same day, BellSouth contends that it issued an internal order to separate pre-petition and post-petition charges on Debtor's account and used the date of Debtor's filing, August 31, 1995, as the relevant date to separate charges. Following its regular procedure, BellSouth "closed" Debtor's pre-petition account and "opened" Debtor's post-petition account. Debtor continued with her same telephone number, same optional services, and same long distance carrier. As a result of this internal procedure, the final bill for Debtor's pre-petition account was sent not to Debtor but to BellSouth's internal bankruptcy group on October 6, 1995.

Debtor called BellSouth on October 16, 1995 and asked BellSouth to permit her until November 3, 1995 to pay the $75 deposit, to which BellSouth agreed. Thereafter on October 20, 1995, BellSouth sent Debtor a bill for $118.73 that they allege consisted exclusively of post-petition charges (those incurred after August 31, 1995). Although plaintiff had previously received a BellSouth bill for $113.73 dated September 20, 1995, which included both pre-petition and post-petition charges, BellSouth alleges it had not yet received notice of Debtor's bankruptcy when it issued that bill. BellSouth alleges that the October 6, 1995 final bill for Debtor's pre-petition account was sent to BellSouth's internal bankruptcy group, not Debtor.

On November 2, 1995, Debtor contacted BellSouth to make arrangements to pay her October 20, 1995 bill. BellSouth agreed to let Debtor pay only $78.33 of the current $118.73 bill and pay the remaining $40.00 balance with her December bill. On November, 4, 1995, BellSouth received Debtor's payment of $80.00 as agreed.

Nevertheless, BellSouth contends that since Debtor's bankruptcy, Debtor has repeatedly failed to pay her post-petition charges. BellSouth further alleges that on December 12, 1995, it informed Debtor that her service would be terminated if she failed to pay her "regulated charges" of $64.15 by December 19. Although Debtor ultimately

paid these charges, BellSouth alleges that she again became delinquent in her payments to BellSouth. Accordingly, BellSouth terminated Debtor's services on February 27, 1996 for her failure to pay her post-petition obligations for her "regulated charges."

Consequently, Debtor filed this adversary proceeding against BellSouth alleging claims arising out of BellSouth's provision and termination of services post-petition. Debtor essentially asserts six claims against Bell-South under both bankruptcy and non-bankruptcy federal law based on BellSouth's provision, billing, and termination of telephone service to Debtor subsequent to the filing of her bankruptcy petition. Specifically, Debtor asserts claims for alleged: (1) bankruptcy discrimination pursuant to 11 U.S.C. § 366; (2) bankruptcy discrimination under 11 U.S.C. § 525; (3) violation of the automatic bankruptcy stay under 11 U.S.C. § 362; (4) civil rights violations under 42 U.S.C. § 1983; (5) deprivation of due process under the federal constitution; and (6) violations of the Fair Debt Collection Practices Act.

On May 23, 1996, Debtor filed this motion, urging the Court to withdraw reference to the Bankruptcy Court as the matter involved substantial and material questions of bankruptcy as well as non-bankruptcy laws.

## II.  Law and Analysis

### A.  *Standard for Withdrawing Reference*

■ Section 157(d) of Title 28 provides as follows:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Courts interpreting this statute have generally restrictively interpreted its effect. *See Lifemark Hospitals of Louisiana, Inc. v. Liljeberg Enterprises, Inc.*, 161 B.R. 21 (E.D.La.1993); *United States Gypsum Co. v. National Gypsum Co.*, 145 B.R. 539

(N.D.Tex.1992); *In re Johns–Manville Corp.*, 63 B.R. 600 (S.D.N.Y.1986); *In re White Motor Corp.*, 42 B.R. 693 (N.D.Ohio 1984). Withdrawal of reference should be granted in only a limited class of proceedings and is not intended to be an "escape hatch" from bankruptcy court into district court. *Lifemark*, 161 B.R. at 24.

■ Mandatory withdrawal of the reference from bankruptcy court is appropriate only where (1) the proceeding in the bankruptcy court involves a substantial and material question of both title 11 and non-Bankruptcy Code federal law, (2) the non-Bankruptcy Code federal law has more than a de minimis effect on interstate commerce, and (3) the motion for withdrawal was timely filed. *Lifemark*, 161 B.R. at 24.

### B.  *Substantial and Material Questions of Bankruptcy and Non–Bankruptcy Laws*

■ To find that "substantial and material" consideration of non-bankruptcy laws is necessary, the Court must determine that the motion to assume "requires 'significant interpretation' [of such non-bankruptcy laws] on the part of the Court." *Lifemark Hospitals of Louisiana, Inc. v. Liljeberg Enterprises, Inc.*, 161 B.R. 21 (E.D.La.1993). Where application of non-bankruptcy federal law is merely speculative, mandatory withdrawal is not necessary. *Id.* In addition, simple application of fixed legal standards provided by such non-bankruptcy laws to a given set of facts does not necessarily trigger mandatory withdrawal. *Id.*

With these standards in mind, the Court addresses the substance of Debtor's motion to withdraw reference to the Bankruptcy Court.

#### 1.  Claim of Civil Rights Violation Under 42 U.S.C. § 1983

■ Debtor contends that BellSouth deprived her of rights guaranteed to her under federal law, *i.e.*, the Fair Debt Collection Practices Act (the "FDCPA") and the anti-discrimination provisions of the Bankruptcy

Code and, therefore, BellSouth is liable to Debtor under 42 U.S.C. § 1983.[1]

The Court finds that Debtor's § 1983 claim against BellSouth does not involve substantial and material questions of federal law such that mandatory withdrawal of reference is required. Even assuming, *arguendo*, that BellSouth has deprived Debtor of federally created rights, Debtor has not stated a claim against BellSouth under § 1983 as BellSouth is a private actor not a state actor as required by § 1983. Further, BellSouth's status as a regulated utility is insufficient to support a § 1983 claim, as the Supreme Court has found that the mere fact that a business is subject to state regulation does not by itself convert its action into that of the State. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). Finally, neither a utility's monopoly status, its provision of essential public services, its public interest, nor its tariff regulations transform a privately owned utility into a state actor. *Id.*

Consequently, the Court finds that given that the United States Supreme Court has ruled on the exact issue presented by Debtor's § 1983 claim, Debtor's § 1983 claim against BellSouth does not involve "substantial and material" questions of federal law, nor does it involve "significant interpretation." At most, Debtor's § 1983 complaint involves routine application of well-settled law.

### 2. Claim of Constitutional Violations

██ In order to prove deprivation of a right protected by the Due Process Clause of the Fourteenth Amendment, a plaintiff must prove state action. *Landry v. A–Able Bonding, Inc.*, 75 F.3d 200, 203 (5th Cir.1996); *Doe v. Rains County Indep. School Dist.*, 66 F.3d 1402, 1406 (5th Cir.1995). As discussed above, BellSouth is not a state actor.

██ Similarly, the due process clause of the Fifth Amendment applies only to federal actors. *Richard v. Hinson,* 70 F.3d 415, 416–17 (5th Cir.1995), *petition for cert. filed,* —— U.S. ——, 116 S.Ct. 2522, 135 L.Ed.2d 1047 (1996); *Blackburn v. City of Marshall,* 42 F.3d 925, 930 n. 3 (5th Cir. 1995). BellSouth is a privately owned utility. It is not the federal government, a federal agency, or a federal employee. Consequently, BellSouth is not subject to claims under the Fifth Amendment.

The Court finds that plaintiff's due process claims do not present a substantial and material question of federal law. The due process principles are well-settled and simply require rote application to the facts before the court.

### 3. Violations of the Fair Debt Collection Practices Act

██ Debtor, in her claim under the FDCPA, 15 U.S.C. § 1692 *et seq.*, essentially alleges that her September and October 1995 bills included pre-petition long distance charges. Debtor, therefore alleges that these acts violate the FDCPA. In order to prevail on an FDCPA claim, a plaintiff must prove that: (1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA. *Sibley v. Firstcollect, Inc.,* 913 F.Supp. 469, 471 (M.D.La.1995).

The FDCPA only applies to a "debt collector," one who collects or attempts to collect debts owed or asserted to be owed to another. 15 U.S.C. § 1692a(6). BellSouth contends that even assuming that its conduct was abusive or unconscionable, the FDCPA does not apply because BellSouth was not a bill collector and only collected for its own account. Nevertheless, Debtor contends that BellSouth collected debts for her long distance carrier, MCI.

Apparently, although BellSouth is not an interstate long distance carrier, BellSouth's bills include a customer's interstate long distance charges. In the case at issue, Debtor's

---

1. Section 1983 provides that:
   Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

chosen long distance carrier was MCI. BellSouth alleges that it has a contract with MCI whereby BellSouth purchases MCI's accounts receivable for long distance charges that BellSouth bills. Consequently, when BellSouth bills a customer's MCI charges, BellSouth collects those receivables for its own account. Therefore, BellSouth contends, it owned all of the MCI accounts collected and was only collecting on its own behalf when sending monthly bills.

The Court finds plaintiff's claim under the FDCPA lacking and insufficient to support a withdrawal of reference from the bankruptcy court. BellSouth, when it billed Debtor for September and October 1995 long distance charges, was not acting as a debt collector, but as a creditor. Further, at the time BellSouth purchased this account, the account was not in default. The legislative history of § 1692a(6) indicates that a debt collector does not include the consumer's creditors or an assignee of a debt, as long as the debt was not in default at the time it was assigned. *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir.), *on reh'g*, 761 F.2d 237 (5th Cir.1985). Consequently, Debtor's claim under the FDCPA does not present a substantial and material question requiring withdrawal of the bankruptcy reference.[2]

### III. Conclusion

The Court finds that the proceeding in the bankruptcy court does not involve a substantial and material question of both title 11 and non-Bankruptcy Code federal law. Debtor's § 1983 and due process claims, as well as the claim pursuant to the FDCPA do not necessitate "substantial and material" consideration of non-bankruptcy laws. Rather, they simply require rote application of well-settled principles of law to the facts before the court.

Accordingly,

**IT IS ORDERED** that Debtor's "Motion to Withdraw Reference to the Bankruptcy Court" be and hereby is **DENIED**.

---

2. In light of the Court's determination that the instant action does not involve substantial and material questions of bankruptcy and non-bankruptcy laws, it is not necessary for the Court to determine whether the non-Bankruptcy Code federal law has more than a de minimis effect on interstate commerce and whether the motion for withdrawal was timely filed.